UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ACCESS INTERNATIONAL ADVISORS LIMITED | : : | Civil Action |
| | : | |
| Plaintiff | : | |
| | : | 3:09-cv-01885 (SRU) |
| | : | |
| V. | : | |
| | : | |
| | : | |
| ARGENT MANAGEMENT CO. LLC | : | December 16, 2009 |
| | : | |
| Defendant | : | |

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

Defendant Argent Management Co. LLC ("Argent") opposes remand of this action to State court. The arguments of plaintiff Access International Advisors Limited ("AIA") in support of its motion to remand this proceeding are invalid for several reasons. First, the prejudgment remedy under C.G.S. §52-278c *et seq.* is a "proceeding" and not an "action". Proceedings are removable under 28 U.S.C. §1446(b). However, the purported prohibition against removal contained in 28 U.S.C. §1441(b) is inapplicable to this proceeding as it applies solely to "actions" and not "proceedings". Section 1441(b) states: "Any other such **action** shall be removable only if none of the parties in interest **properly joined and served as defendants** is a citizen of the State in which such **action** is brought." [Emphasis supplied] An Application for a Prejudgment Remedy and Motion for Prejudgment Disclosure of Property and Assets (the "PJR") is not an action and no action has been served; the PJR contemplates the commencement and service of an action at a later date. Therefore, §1441(b) does not apply.

Second, as part of its proof AIA must show that it complied with the laws of the United States, including the Securities Exchange Act of 1934 (the "Exchange Act"). AIA's claim therefore arises under the laws of the United States and this Court therefore has federal question jurisdiction

under 28 U.S.C. §1331.  The proposed complaint filed in State court annexes the parties' agreement which mandates AIA's compliance with the Federal securities laws.  The proposed complaint further alleges that AIA has complied with all obligations thereunder.  As explained below, under these circumstances this Court has federal question jurisdiction of this case.

Finally, there is no basis for AIA's request for costs and actual attorney's fees (collectively, "sanctions") pursuant to 28 U.S.C. § 1447(c).  Obviously, denial of remand obviates such claim. Nevertheless, sanctions would have to be denied even if this Court were to grant AIA's application. Argent clearly has an objectively reasonable basis for seeking removal since the plethora of authority for removal cited herein demonstrates it was not unreasonable for Argent to believe it could prevail. Indeed, even if no plausible basis for removal existed, sanctions would have to be denied since the removal did not "meaningfully prolong" this action.

## FACTUAL BACKGROUND

### A.  Events Preceding The PJR

Under the written agreement AIA seeks to enforce (Ransom Decl. Ex. "A") dated August 16, 2001 entitled "Sourcing Agreement" (the "Agreement"),  AIA was to procure investors for financial funds managed by Argent in exchange for a fee.[1]  That Agreement provides that payment should be made to AIA in December of each year for fees earned during the prior year.  It further provides (*Id*. ¶9(f)): "This Agreement shall be governed by and construed in accordance with the law of the State of New York, U.S.A., excluding the choice of law and conflicts of law provisions thereof."

In connection with its procurement of investors, AIA visited Argent's Connecticut offices, communicated by mail, telephone and email with Argent employees, explained the investments to prospective investors at Argent's offices and, in fact, assisted United States companies in investing

---

[1] All exhibits referred to herein are annexed to the Declaration of Patricia Ransom dated December 16, 2009 and cited as "Ransom Decl. Ex. "__".

with Argent (Ransom Decl. ¶3; Ex. "B").

Over the years, Argent had paid the fees due under the Agreement in December or early in the following year by wire transfer of funds to AIA's bank account (Ransom Decl. ¶4). In December, 2008, as the Bernard Madoff ponzi scheme publicly unfolded, AIA rejected Argent's tender of fees (*Id*. Ex. "C"). This was apparently because AIA had procured investors for Madoff's investment funds and AIA's clients had lost enormous sums of money (*Id*. Ex. "D"). Tragically, in December, 2008, one of AIA's two owners, Thierry de la Villehuchet, committed suicide allegedly as a result of AIA's clients having lost $1.8 billion in Madoff investments (*Id*. ¶4; Ex. "D").[2]

At about the same time as the Trustee administering the Madoff bankruptcy began to seek and freeze assets, AIA directed Argent to pay the fees due under the Agreement to third-parties. Commencing in February, 2009 AIA variously requested that Argent wire the fees to an employee named Benoit Chastel located somewhere in Europe (*Id*. Ex. "E"), to a bank account in Brussels under the name of Access Partners SA rather than to the AIA account (*Id*. Ex. "F") and to an attorney located in Luxembourg (*Id*. Ex. "G").

Suspicious that it was becoming embroiled in an asset diversion, Argent did not want to participate in these activities. AIA initially threatened to sue Argent in the United States District Court for the Southern District of New York ostensibly since New York law is the governing law under the Agreement (*Id*. Ex. "H"). After being presented with a proposed draft complaint (*Ibid*.), Argent's counsel warned AIA's New York counsel that a report would be made to the United States Bankruptcy Court for the Southern District of New York about AIA's fraudulent scheme in order to avoid a successful clawback by the Madoff victims and Federal Bankruptcy Trustee (*Id*. ¶6).

---

[2] Under New York law, which governs the Agreement, rejection of tender constitutes a breach of the Agreement and would relieve Argent from its obligations thereunder. *Litwak v. Wolkenberg*, 130 A.D.2d 630, 515 N.Y.S.2d 559 (2d Dep't, 1987); *BSL Dev. Corp. v. Broad Cove, Inc.*, 127 A.D.2d 722, 512 N.Y.S.2d 120 (2d Dep't, 1987); *Puro v. Puro*, 79 A.D.2d 925, 434 N.Y.S.2d 424 (1ˢᵗ Dep't, 1981).

In light of this threat, AIA avoided New York's federal court and instead filed a PJR in Connecticut Superior Court (*Id*. Ex. "I").  Argent was served with same on October 23, 2009 (*Id*. ¶ 7).  Curiously, the PJR contains the apparently false affidavit of Guy de la Tour du Pin Verclause, an AIA employee, who unnecessarily swears that (*Id*. Ex. "I" Bates 00041-00042) "AIA had absolutely no involvement with or connection to Bernard Madoff,...."[3]

**B.  Prior Proceedings**

Argent is a citizen of the States of Delaware, Connecticut and New York (Dkt. 8). AIA admits that at all material times AIA was and continues to be a citizen of the Bahamas.[4] Additionally, there is no dispute that the amount in controversy exceeds $75,000 inasmuch as AIA claims it is owed $1,190,678 and is seeking to attach assets in such amount.

The first sentence of the PJR (Ransom Decl. Ex. "I") signed by AIA's counsel, Douglas J. Varga, recites that "Access International Advisors Limited is about to commence an action against Argent Management Co. LLC...."  The PJR contains an unsigned summons and an unsigned complaint naming Argent as the sole defendant.  *See* Ransom Decl. Ex. "I", Bates 00009 through 00038.

Argent has never received any papers from AIA concerning the subject dispute other than the PJR (Ransom Decl. ¶ 10).  Specifically, Argent has never received a signed summons and complaint from AIA (*Ibid*.).  The affidavits of service of the PJR which are annexed to AIA's motion to remand as Exhibit "1" to the Declaration of Douglas J. Varga, recite that only an "unsigned complaint" has been served in connection with AIA's application for a prejudgment remedy (Dkt. 13, Ex. "1").

---

[3]  Bates numbers have been affixed to the PJR pages for ease of reference herein.

[4]  Although in its Notice of Removal Argent alleged upon information and belief that AIA was a citizen of both New York and the Bahamas, AIA has corrected this misapprehension and admits that it is located solely in the Bahamas (Dkt. #14 p. 7, fn. 4). Argent accepts AIA's representation on this issue, withdraws the subject recital and therefore complete diversity in fact exists.

The unsigned proposed complaint accompanying the PJR (Ransom Decl. Ex. "I", Bates 00009-00038) alleges violations of the Agreement and annexes a copy of the Agreement as Exhibit "1" thereto.  In support of its claim for breach of contract, AIA alleges that (¶19) "AIA has performed all conditions required of it under the terms of the Sourcing Agreement regarding its entitlement to the AIA Fees for 2007."

Under the Agreement, the conditions with which AIA is required to comply include AIA's representations and covenants that (Ransom Decl. Ex. "A", ¶3(d)) "It has all governmental, regulatory and exchange approvals and licenses, and has effected all filings and registrations with governmental agencies required to conduct its business and to act as described herein...."  AIA also warranted that (*Id.* ¶5(b)) it "shall perform its duties in a manner consistent with any applicable laws and regulations to which it may be subject.  Further, AIA shall perform its duties only in those jurisdictions in which it may lawfully perform its duties (e.g., AIA shall, prior to performing its duties in any jurisdiction, obtain any licenses or other qualifications required by such jurisdictions)."  As explained below, the laws, regulations, and exchange rules with which AIA has pled compliance includes the Exchange Act.

This case was removed from State court on November 19, 2009 based on 28 U.S.C. §1332 (diversity of citizenship).  Subsequently, on November 23, 2009, Argent filed an Amended Notice of Removal which additionally alleged that this Court has jurisdiction under 28 U.S.C. §1331 (federal question).  AIA filed its motion to remand on November 25, 2009.  Argent's response was directed by the Court to be filed on December 16, 2009 in order to avoid any delay in the action.

**ARGUMENT**

**POINT I**

**ARGENT HAS THE RIGHT TO REMOVE UNDER 28 U.S.C. §1332**

**A.    It Is Undisputed That There is Complete Diversity and the Amount In Controversy Exceeds $75,000**

Diversity jurisdiction exists where the dispute is between citizens of a State and citizens of a foreign state and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(2).  Here, the parties agree that Argent is a citizen of the States of Delaware, Connecticut and New York (Pl. Mem., Dkt.  #14, p. 7) and AIA is located in the Bahamas (*Id*. fn. 4).  Additionally, there is no dispute that the amount in controversy exceeds $75,000 inasmuch as AIA claims it is owed $1,190,678 (*Id*. p. 4; Ransom Decl. Ex. "I", Bates 00002).

**B.    Remand Is Warranted Only Where An Action Has Been Commenced And Served On Argent As A Citizen of Connecticut**

**1.  28 U.S.C. §1446(b) provides for removal of a PJR proceeding**

It is well settled that AIA's application for a prejudgment remedy does not constitute commencement of a civil action.  *Bernhard-Thomas Building Systems, LLC v. Dunican*, 286 Conn. 548, 944 A.2d 329 (2008); *Feldmann v. Sebastian*, 261 Conn. 721, 805 A.2d 713 (2002).  *Accord*: *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105 (1991).  As the Connecticut Supreme Court explained in *Bernhard-Thomas* (286 Conn. at 560-1), "there is no service of the requisite *signed* writ of summons .... the language of the pre-judgment remedy statutes ... makes it clear that proceedings for prejudgment remedy applications and civil actions are separate and distinct, with a prejudgment remedy application generally preceding the filing of the civil action ... [and] [a] prejudgment remedy application is brought as a prelude to the filing of a civil action...."

Nevertheless, removal of state court proceedings prior to service of an action is permitted

under 28 U.S.C. § 1446(b).  That section states:  "The notice of removal of a civil action **or proceeding** shall be filed within thirty days after the receipt by the defendant, through service **or otherwise**, of a copy of the initial pleading ....") [Emphasis supplied] A PJR is a proceeding. *Bernhard-Thomas Building Systems, LLC v. Dunican*, *supra* 286 Conn. at 559 ("This statutory language also refers to prejudgment remedies and civil actions as separate proceedings.").

That proceedings such as a PJR may be removed under §1446(b) is well settled. *Elite Limousine Plus, Inc. v. District 15*, 2006 WL 2434473 (S.D.N.Y. 2006); *Massey v. Cassens & Sons, Inc.*, 2006 WL 381943, at *1 (S.D.Ill. 2006).  *See also Thomson v. Novartis Pharm. Corp.*, 2007 WL 1521138 (D.N.J. 2007)(removal of action before service); *Johnson v. Precision Airmotive*, LLC, 2007 WL 4289656 at *6 (E.D.Mo. 2007)(same); *Waldon v. Novartis Pharm. Corp.*, 2007 WL 1747128 at *3 (N.D.Cal. 2007)(same).  Indeed, during a conference call on December 15, 2009, this Court acknowledged that removal of prejudgment applications brought under C.G.S. §§ 52-278c is common.

### 2.    28 U.S.C. §1441(b) does not prohibit removal of a proceeding

Plaintiff contends that removal is defeated by 28 U.S.C. §1441(b).  However, this statute provides that where jurisdiction is founded on diversity "such **action** shall be removable only if none of the parties in interest properly joined and **served** as defendants is a citizen of the state in which the **action** is brought." [Emphasis supplied]  AIA asserts that this so-called "forum defendant rule" precludes removal of the PJR.  AIA has ignored the clear wording of the statute which does not speak to proceedings and case law.

Section 1441(b) is inapplicable to institution of a PJR proceeding because, as explained above, it is not an action and, in any event, no action has been served on Argent.  In *Massey v. Cassens & Sons, Inc.*, 2006 WL 381943 at *2 (S.D.Ill. 2006), the court stated that federal courts have

decided "virtually uniformly" that the forum defendant rule only applies if a resident defendant is both joined and served with an action at the time of removal.

Thus, in *Thomson v. Novartis Pharm., Corp.*, 2007 WL 1521138 (D.N.J.  2007), defendant removed the action prior to service of the summons and complaint on the grounds of diversity of citizenship.  The court denied remand because §1441(b)'s plain language required service of the complaint on the forum defendant in order to preclude removal, and that any conclusion to the contrary would effectively read out the "and served" language of the statute. *See also Jaegar v. Schering Corp.*, 2007 WL 3170125 (D.N.J. 2007); *Ripley v. Eon Labs Inc.*, 2007 WL 2406806 (D.N.J. 2007);  *Yocham v. Novartis Pharm. Corp.*, 2007 WL 2318493 (D.N.J. 2007); *Frick v. Novartis Pharm. Corp.*, 2006 WL 454360 at *3 (D.N.J. 2006).

Other courts have similarly denied remand where removal was effectuated prior to service of the action.  *Johnson v. Precision Airmotive*, LLC, 2007 WL 4289656 at *6 (E.D.Mo. 2007); *Waldon v. Novartis Pharm. Corp.*, 2007 WL 1747128 at *3 (N.D.Cal. 2007)(finding "no compelling reason to depart from the plain text of section 1441(b)....").

This Court cannot ignore the plain language of §1441(b).  Statutes conferring both diversity and removal jurisdiction are strictly construed. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396 (1978).  "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326 (1979); *see also* 2A Sutherland *Statutes and Statutory Construction* § 46:6 (7th Ed.) ("No clause, sentence or word shall be construed as superfluous, void or insignificant if a construction can be found which will give force to and preserve all the words of the statute.").

Nor do the cases cited by AIA (Pl. Mem., Dkt #14, p. 9) contradict any of the authorities cited above.  They uniformly concern remand after the commencement of an action and service of a

summons and complaint.  For example, in *HSBC Bank, USA v. Norley*, 2004 WL 813024, *1 (D. Conn. 2004), Judge Underhill specifically noted that defendants "were served with the Summons and Complaint" in a filed foreclosure action.

AIA's motion to remand should be denied.

## POINT II

### THIS COURT HAS JURISDICTION OF THIS PROCEEDING UNDER 28 U.S.C. §1331 BECAUSE THE ACTION ARISES UNDER THE LAWS OF THE UNITED STATES

**A.     Argent Was Entitled To File An Amended Notice of Removal**

Under 28 U.S.C. § 1446(b), Argent was permitted to file an Amended Notice of Removal as of right "prior to the expiration of the thirty-day period for seeking removal." *Uppal v. Electronic Data Systems*, 316 F.Supp.2d 531, 535 (E.D.Mich. 2004), *quoting* 14C Wright, Miller & Cooper, *Federal Practice and Procedure* § 3733 at 357-61 (3d Ed. 1998).   The thirty day period is "calculated from the date of service of the initial state court pleading".  *CBS Inc. v. Snyder*, 762 F.Supp. 71, 73 (S.D.N.Y. 1991).

Here, Argent was served with the PJR on October 23, 2009.  The original Notice of Removal (Dkt. #1) asserting diversity jurisdiction was filed on November 19, 2009.  The thirtieth day from October 23, 2009 fell on Sunday, November 22, 2009 and therefore, under Rule 6, Fed. R. Civ. P., the last day to file the Amended Notice of Removal was Monday, November 23, 2009 when the Amended Notice of Removal was filed (Dkt. ##'s 8 and 9).

Accordingly, even though the amendment to the original Notice of Removal included a new basis for jurisdiction not found in the original Notice of Removal, such amendment was proper and as of right since it was within thirty days from the date of Argent's receipt of the PJR.

**B.    Federal Question Jurisdiction Exists**

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manuf.*, 545 U.S. 308, 312, 125 S.Ct. 2363 (2005), the Supreme Court reaffirmed the long-standing rule that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." To determine whether federal question jurisdiction exists for state-law claims, the Supreme Court created a four-pronged test, holding that (545 U.S. at 314) "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."

This Court has federal question jurisdiction over both of AIA's claims as they satisfy the four-pronged test set forth in *Grable*.

      1.    **The proposed complaint necessarily raises a federal issue since AIA must show that it has complied with the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.***

AIA's draft complaint for breach of the Agreement (Count One) and declaratory judgment as to the parties' respective rights and obligations under the Agreement (Count Two) requires AIA to plead and prove that it has complied with its obligations thereunder.  *See, e.g., Tagare v. NYNEX Networks Systems Co.*, 921 F. Supp. 1146 (S.D.N.Y. 1996)("[t]o state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of an agreement between the plaintiff and defendant; (2) **due performance of the contract by the plaintiff**; (3) breach of the contract by the defendant; and (4) damages resulting from the breach" (Emphasis supplied).  Thus, AIA alleges in its proposed complaint that (Ransom Decl. Ex. "I", Bates 00016, ¶19)"AIA has performed all conditions required of it under the terms of the Sourcing Agreement regarding its entitlement to the AIA Fees for 2007."

Under the Agreement, the conditions with which AIA is required to comply include AIA's representations and covenants that (Ransom Decl. Ex. "A", ¶3(d)) "It has all governmental, regulatory and exchange approvals and licenses, and has effected all filings and registrations with governmental agencies required to conduct its business and to act as described herein...." AIA also warranted that (*Id.* ¶5(b)) it "shall perform its duties in a manner consistent with any applicable laws and regulations to which it may be subject. Further, AIA shall perform its duties only in those jurisdictions in which it may lawfully perform its duties (e.g., AIA shall, prior to performing its duties in any jurisdiction, obtain any licenses or other qualifications required by such jurisdictions)."

Although the Agreement does not specifically identify the laws and regulations with which AIA must comply, it clearly encompasses the federal securities laws, including the Exchange Act, 15 U.S.C. §78a *et seq.* Under §§ 3(a)(4) and 15(a)(1) of the Exchange Act, AIA is required to register as a broker-dealer since it is engaged in the business of effecting transactions in securities for the accounts of others and makes use of the telephone and other instrumentalities of interstate commerce to effect transactions in securities. *See SEC v. Martino*, 255 F.Supp.2d 268 (S.D.N.Y. 2003); *SEC v. Hansen*, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. 1984), *citing* N. Wolfson, R. Phillips, T. Russo, *Regulation of Brokers, Dealers and the Securities Markets*, §1.06 (1977). *See also* S.E.C. Release No. 34-27017 (July 11, 1989). Ms. Ransom's Declaration makes clear that AIA is a "foreign entity that is physically operating within the United States, that effects, induces or attempts to induce securities transactions" which is "required to register with the Securities and Exchange Commission (the 'Commission') as a broker-dealer, even if its activities are directed exclusively to foreign investors outside of the United States." S.E.C. Release No. 34-27017, 41 (Jul. 11, 1989). AIA itself recognizes the import of the securities law in this case when it argues in its brief that the securities were exempt from registration (Pl. Mem. Dkt 14, p. 8, fn. 5). However, this

does not render AIA exempt from broker-dealer requirements.

Nor can AIA avoid the existence of a federal question by omitting the federal statutes it was required to comply with under the Agreement. "The artful-pleading doctrine, another corollary to the well-pleaded complaint rule, prevents a plaintiff from avoiding removal 'by framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint.'" *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998). In *Marcus*, the Second Circuit applied the artful pleading doctrine in holding that plaintiffs' breach of warranty claim, which was presented in the complaint as a state law claim, arises under federal law and thus provided a basis for removal. Specifically, the Second Circuit held that, although plaintiffs did not expressly identify the source of their agreements with defendants, the only possible source were the tariffs defendant filed with the Federal Communications Commission pursuant to the Federal Communications Act of 1934.

### 2.     The meaning of the Exchange Act provisions with which AIA is required to comply is in dispute

There can be no question that the meaning of the Exchange Act provisions with which AIA is required to comply is in dispute since AIA has alleged in its proposed complaint that it has complied with those provisions (Ransom Decl. Ex. "I", Bates 00016, ¶ 19). However, a review of the SEC's broker-dealer registrations discloses that AIA is not a registered broker-dealer (*Id*. ¶13).

### 3.     The substantiality prong is satisfied as interpretation of the Exchange Act is an important issue of federal law

There can be no dispute that interpretation of the Exchange Act is an important issue of federal law which precludes remand. In *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 98 (2d Cir.), *cert. denied* 534 U.S. 1066 (2001), the Second Circuit held that the action "implicates a federal interest sufficient to sustain removal of the action to federal court" where plaintiff's state-

law claims concerned alleged violations of the federal securities laws and the interpretation of those laws.  In *Frayler v. New York Stock Exchange, Inc.*, 118 F. Supp. 2d 448, 451 (S.D.N.Y. 2000), the court denied remand because interpretation of the Exchange Act "is wholly a matter of federal law and, indeed, a matter of intense federal concern given the importance of federal regulation of the stock market."  *Accord*:  *Gobble v. Hellman*, 2002 WL 34430286 at *3 (N.D. Ohio)("Thus, interpreting the Exchange Act and the rules and regulations promulgated thereunder is a matter of substantial federal concern and **where a plaintiff's claims, however labeled, require such an interpretation**, those claims are properly removed to federal court for disposition")[Emphasis supplied].

Here, AIA's state law claim of breach of contract implicates a federal issue.  In order to recover, AIA must demonstrate that it complied with the terms of the Agreement by adhering to the requirements of the federal securities laws. In short, AIA's claims raise a substantial federal issue and remand is therefore precluded.

> **4.    This Court may entertain the issue of AIA's compliance with the Exchange Act without disturbing any congressionally approved balance of federal and state judicial responsibilities**

The fourth prong of the test to establish federal question jurisdiction is satisfied on two separate grounds.  First, this Court's determination of whether AIA violated the Exchange Act cannot possibly disturb any Congressionally approved balance of federal and state judicial responsibilities since Congress has explicitly determined that the federal courts "shall have exclusive jurisdiction of violations of this chapter [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."  15 U.S.C. § 78aa.  *See also Frayler v. New York Stock Exchange, Inc.*, 118 F. Supp. 2d 448, 451 (S.D.N.Y. 2000)(District Court denied motion to

remand state-law claims that depended on determination of whether the Exchange Act was violated, holding that federal courts have exclusive jurisdiction of violations of the Exchange Act); *Accord*: *Gobble v. Hellman*, 2002 WL 34430286 at *3 (N.D. Ohio); Ryan, R. *No Welcome Mat, No Problem?: Federal-Question Jurisdiction After Grable*, 80 St. John's L. Rev. 621, 650-51 ("A welcome mat exists when a plaintiff asserts a state-law claim that incorporates a federal law and when Congress provided a federal private right of action for violations of the federal law. . . .  If a welcome mat is present in a second-branch case [state-law claim raising federal issue], the disruptiveness inquiry ends, and jurisdiction is proper as long as the other three prongs are met").

Second, there is no disturbance of any Congressionally approved balance of federal and state judicial responsibilities since, as in *Grable*, it will be the rare state breach of contract case that will raise a contested matter involving the Exchange Act.

5.    **Argent does not seek to establish federal question jurisdiction based on a defense to AIA's claims**

AIA argues that Argent seeks to establish federal question jurisdiction based on its intended defense that the Agreement is unenforceable under federal law (Pl. Mem., Dkt #14, pp. 10-12).  As discussed above, however, the federal question arises from AIA's case-in-chief and not from Argent's defense.  Accordingly, the cases AIA cites in support of its argument are inapposite.

**POINT III**

**ARGENT IS NOT LIABLE FOR COSTS AND ATTORNEY'S FEES UNDER 28 U.S.C. §1447(c)**

AIA contends that Argent is liable for costs and attorney's fees (collectively "sanctions") because the removal of this case from State court was (Pl. Mem., Dkt #14, p. 12) "objectively unreasonable".  Manifestly, as the above arguments demonstrate, since this action was properly removed AIA's application for sanctions must be denied.  *See Circle Indus. USA, Inc. v. Parke*

*Constr. Group, Inc.*, 183 F.3d 105 (2d Cir.), *cert. denied* 528 U.S. 1062 (1999).

Nevertheless, even if this Court were to grant AIA's motion to remand, sanctions should be denied.  Section 1447(c) states in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "[C]ourts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704 (2005).  This, of course, is the standard followed in this District. *See e.g. Szewczyk, PPA v. Wal-Mart Stores, Inc.*, 2009 WL 3418232 (D. Conn. 2009); *MCredit, Inc. v. City of Waterbury*,    F.Supp.2d , 2009 WL 2870196 (D. Conn. 2009); *Andreoni v. Forest City Enterprises, Inc.*,    F.Supp.2d , 2009 WL 1789435 (D. Conn. 2009).

This District's courts have held that an objectively reasonable basis for removal exists where the removing party "had a plausible basis for removing this case", *Trump Hotels & Casino Resorts Dev. Co., LLC v. Roskow*, 2004 WL 717131, *3 (D. Conn. 2004), or "it was not unreasonable for the defendant to think it could prevail." *Engel v. 34 East Putnam Ave. Corp.*, 552 F.Supp.2d 291, 296-97 (D. Conn. 2008).  *See Martin*, *supra* 546 U.S. at 140 ("there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases.").  "Commentators have aptly observed that the jurisdictional issue presented by the removal hinges on a 'very subtle distinction' nestled in 'one of the darkest corridors of the law of federal courts and federal jurisdiction.'" *Biosensory, Inc. v. Bedoukian*, 2007 WL 2221165 (D. Conn. 2007).  *Accord*: *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 2006 WL 1004725, *7 (S.D.N.Y. 2006)("Removability is an evolving and difficult field of law, 'particularly where there is no explicit federal claim on the face of the state court pleading'.").

Thus, in *Contreras v. Host America Corp.*, 453 F.Supp.2d 416, 421 (D. Conn. 2006), the court refused to award fees and costs where the removal issue was "complex and the answer not obvious in light of established case law". Similarly, in *Treasurer v. Forstmann Little & Co.*, 2002 WL 31455245 (D. Conn. 2002), the court explained that defendants' removal did not lack a reasonable basis although rejected by the Court where defendants presented an amalgamation of authorities. And in *Tuccio v. Corleto*, 2007 WL 294129 (D. Conn. 2007), the court refused to award fees and costs despite the fact that defendant's argument was disproved by (*Id*. *1) "the first sentence of section 1441(a)."

Similarly here, Argent has presented a plethora of authority supporting its position that 28 U.S.C. §1441(b) does not preclude removal because the PJR is not an action. Argent has also provided authority and analysis supporting its position that a federal question is presented by the proposed complaint and that this court's jurisdiction is sustainable under 28 U.S.C. §1331. Even if this Court somehow holds that removal was improper, it cannot be denied that an "objectively reasonable basis" exists for the removal.

Indeed, even if this Court were to hold that Argent did not have an objectively reasonable basis for removal, sanctions should be denied. The Supreme Court in *Martin, supra* 546 U.S. at 141, explained that "district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." Such discretion should be exercised here.

First, AIA has not been forthright in its opposition. *Martin* explained that the district court may refuse to award sanctions where there was a (*Ibid*.) "failure to disclose facts necessary to determine jurisdiction...." In *Andreoni v. Forest City Enterprises, Inc.*,   F.Supp.2d   , 2009 WL 1789435 (D. Conn. 2009), Judge Arterton noted that (*Id*. *6) "Defendants' inability to date to make this showing [of complete diversity] raises the question of whether they had an objectively

reasonable basis for" removal.  However, the Court denied sanctions since (*Ibid.*) "*all* parties failed to comprehend or apply the relevant law...."

Here, AIA has ignored the very issue posed by the portion of §1441(b) on which it bases its motion for remand: Whether a PJR constitutes an "action" whose removal is prohibited by the cited sentence.  The answer to that issue appears in the very PJR papers prepared by AIA's counsel which attaches a (Ransom Decl. Ex. "I", Bates 00009-00038) "proposed unsigned Writ, Summons [and] Complaint".  Thus, AIA's contention that Argent's (Pl. Mem. Dkt. #14, p. 10) "original notice of removal was patently frivolous" is itself either frivolous or constitutes a failure to comprehend relevant law so as to preclude the granting of sanctions.

Similarly, in asserting that this Court lacks jurisdiction under 28 U.S.C. §1331, AIA has ignored the exception to the "well pleaded complaint" rule applicable here.  A plaintiff cannot avoid application of §1331 merely by not citing the applicable federal statute.  Here, the proposed complaint filed in State court annexes the parties' agreement which mandates AIA's compliance with the Federal securities laws.  The proposed complaint further alleges that AIA has complied with all obligations thereunder.  As explained above, under these circumstances this Court has federal question jurisdiction of this case.

The second reason sanctions should be denied even if this Court were to hold that Argent did not have an objectively reasonable basis for removal is because there has been no prolonged delay in the litigation.  An award of sanctions is designed "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party."  *Martin*, *supra* 546 U.S. at 140. Where the litigation has not been "meaningfully prolonged" "an award of costs and fees is therefore inappropriate."  *Szewczyk, PPA v. Wal-Mart Stores, Inc.*, 2009 WL 3418232, *4 (D. Conn. 2009). *Accord*: *Gregorian v. New York Life Ins. Co.*, 2009 WL 179217, *5 (E.D.N.Y. 2009)("the decision

to award fees should reflect a balance between 'the desire to deter removals sought for the purpose of prolonging litigation' and the need to protect the basic right to remove".); *Dixon v. Malouf*, 2009 WL 890679 (E.D.N.Y. 2009).

This case was removed from State court on November 19, 2009.  AIA filed its motion to remand on November 25, 2009.  Argent's response was directed by the Court to be filed on December 16, 2009 in order to avoid any delay in the action.  Any dispassionate observer would conclude that this litigation has not been meaningfully prolonged.

Nevertheless, AIA contends that as a result of the removal the PJR hearing did not proceed on November 23, 2009.  AIA further contends that it was (Pl. Mem. Dkt #14, p. 13) "significantly prejudiced" "because AIA had engaged in substantial efforts to prepare for the hearing, and its lawyers and witnesses – one of whom traveled from France for the PJR hearing – rearranged their schedules based on the state court's scheduling order."  However, no proof supporting any of these claims, including plane tickets, is submitted by affidavit or otherwise.  Indeed, this Court should take judicial notice of the fact that the initial hearing scheduled for November 23rd in State court was unlikely to proceed on that date.  Simply put, the instant litigation has not been "meaningfully prolonged" and sanctions would therefore be inappropriate.

**CONCLUSION**

For the foregoing reasons, AIA's motion to remand should be denied.  Further, even if this Court were to somehow grant the motion, sanctions under 28 U.S.C. §1447(c) are not appropriate.

THE DEFENDANT, ARGENT MANAGEMENT CO. LLC
n/k/a CENTAUR MANAGEMENT CO. LLC

By:  /s/ Christopher Rooney
       Christopher Rooney
       Federal Bar No. ct04027

CARMODY & TORRANCE LLP

195 Church Street, 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
(203) 777-5501
Attorneys for Defendant

## <u>CERTIFICATION</u>

I hereby certify that on December 16, 2009, a copy of the foregoing Memorandum in Opposition to Motion to Remand was filed electronically and served by mail on all counsel and pro se parties, including anyone unable to accept electronic filing.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Douglas J. Varga, Esq.
Zeldes, Needle & Cooper, PC
1000 Lafayette Boulevard
P.O. BOX 1747
Bridgeport, CT 06601-1747
Telephone: (203) 333-9441
Facsimile: (203) 333-1489
Email: dvarga@znclaw.com

Jack A. Gordon, Esq. (pending pro hac vice admission)
Joshua B. Katz, Esq. (pending pro hac vice admission)
Kent, Beady & Gordon, LLP
425 Park Avenue, The Penthouse
New York, NY 10022
Telephone: (212) 421-4300
Facsimile: (212) 421-4303
E-mail: JAG@KBG-Iaw.com
JBK@KBG-Iaw.com

/s/ Christopher Rooney
Christopher Rooney
Federal Bar No.: ct04027