# EXHIBIT A

## SOURCING AGREEMENT

AGREEMENT, made as of the 16th day of August, 2001, by and between ACCESS INTERNATIONAL ADVISORS LIMITED, a corporation organized under the laws of the Bahamas ("AIA"); and ARGENT MANAGEMENT CO. LLC (the "Investment Manager").

### WITNESSETH

WHEREAS, AIA is engaged in the business, among others, of raising capital for investment managers, investment advisors and investment funds; and

WHEREAS, the Investment Manager serves as an investment manager and/or consultant of Argent Classic Convertible Arbitrage Fund (Bermuda) Ltd. and Argent LowLev Convertible Arbitrage Fund Ltd. (collectively the "Fund") and may manage the investments of clients directly in individual accounts and/or indirectly as the manager of other private investment funds and pooled investment vehicles (each, an "Account"); and

WHEREAS, the Investment Manager desires that AIA provide assistance, outside of the United States, to the Investment Manager in raising capital for, and directing clients to, the Investment Manager for the purpose of investing in the Fund (collectively, the "Sourcing Services"); and AIA is willing from time-to-time to provide the Sourcing Services to the Investment Manager.

NOW, THEREFORE, for and in consideration for the premises and the mutual covenants hereinafter contained, the parties hereto agree as follows:

1. AIA Fees. In consideration for AIA providing the Sourcing Services resulting in investments in the Fund during the term of this Agreement ("Directed Investments"), the Investment Manager shall pay AIA 15% of (i) the asset-based management fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees, and (ii) the performance-based fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees ((i) and (ii) collectively, the "Manager Fees" and AIA's 15% thereof, the "AIA Fees"). AIA will be entitled to receive from the Investment Manager AIA Fees with respect to Directed Investments in Type C interests only if both parties hereto so agree by separate written agreement.

The Investment Manager shall pay the AIA Fees to AIA once a year in December for the 12 months ended the prior November 30th.

In the event AIA introduces to the Fund or the Investment Manager an investor who becomes a client of the Investment Manager by investing assets in an Account, AIA shall be entitled to 15% of all asset based or performance-based fees received by the Investment Manager from the Fund on such invested assets, unless such invested assets are or become subject to another written agreement between AIA and the Investment Manager.

2. Agents. AIA, at its own expense, may employ agents and representatives to assist it in performing the Sourcing Services.

00023

3.   <u>Representation, Warranties and Covenants</u>.  Each of the parties represents, warrants and covenants to the other party as follows:

(a)   It is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and in each other jurisdiction in which the nature or conduct of its business requires such qualification.

(b)   It has full authority under applicable law to perform its obligations under this Agreement.

(c)   This Agreement has been duly and validly authorized, executed and delivered on its behalf and constitutes a legal, valid and binding agreement enforceable against such party in accordance with its terms.

(d)   It has all governmental, regulatory and exchange approvals and licenses, and has effected all filings and registrations with governmental agencies required to conduct its business and to act as described herein, and the performance of such obligations will not contravene or result in a breach of any provision of its certificate of incorporation, by-laws or any agreement, instrument, order, law or regulation binding upon it.

(e)   The foregoing and following representations and warranties shall be continuing during the term of this Agreement, and if at any time any event shall occur which could make any of the foregoing or following incomplete or inaccurate, it shall promptly notify the other party of the occurrence of such event.

4.   <u>Additional Representations, Warranties and Covenants of Investment Manager</u>.  The Investment Manager represents, warrants and covenants to AIA as follows:

(a)   It is not, and for so long as this Agreement is in effect, shall not be nor required to be registered as an investment adviser under the Investment Advisers Act of 1940, as amended.

(b)   There is, and at all times during the term hereof, there will be, no differential in the fees charged by the Investment Manager for a client introduced to the Investment Manager or the Fund by AIA and an investor who independently invests in the Fund (without the aid of a solicitor).

(c)   It shall, at its own expense, provide to AIA, and in sufficient copies as AIA may reasonably request, the following: (i) a current private placement memorandum with respect to the Fund (the "<u>Memorandum</u>") and (ii) any current sales literature prepared by or on behalf of the Fund ("<u>Sales Literature</u>").  The Investment Manager represents, warrants and covenants that the Memorandum and each item of Sales Literature does not, and will not at any time, contain any untrue statement of material fact or omit to state a material fact necessary to make statements contained therein, in light of the circumstances under which such statements were made, not misleading.

2

00024

5.  Additional Representations. Warranties and Covenants of AIA.  AIA represents, warrants and covenants to the Investment Manager as follows:

(a)     AIA shall furnish Soliciting Services hereunder only pursuant to the terms and conditions set forth herein and pursuant to written instructions that may be provided to it from time to time by the Investment Manager or by a person that AIA reasonably believes is authorized to act on behalf of the Investment Manager.  AIA will not make any solicitation in the United States.

(b)     AIA shall perform its duties in a manner consistent with any applicable laws and regulations to which it may be subject.  Further, AIA shall perform its duties only in those jurisdictions in which it may lawfully perform its duties (e.g., AIA shall, prior to performing its duties in any jurisdiction, obtain any licenses or other qualifications required by such jurisdiction).

6.  AIA and Investment Manager Independent.  AIA and Investment Manager each shall be deemed to be an independent contractor with respect to the other and, unless otherwise expressly provided herein or with the prior written authorization of the other, neither party shall have authority to act for or represent the other, its affiliates, officers, directors or employees in any way and shall not otherwise be deemed to be an agent of the other.  Nothing contained herein shall create or constitute AIA or the Investment Manager as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, nor shall be deemed to confer on either of them any express, implied, or apparent authority to incur any obligation or liability on behalf of any other.

7.  Term and Termination.

(a)     This Agreement shall continue in effect until terminated.

(b)     Either party may terminate this Agreement by giving at least 90 days prior written notice to the other party of its intention to terminate this Agreement effective as of such date.  No such termination shall relieve the Investment Manager from its obligations under Section 1.

(c)     Either AIA or Investment Manager may terminate this Agreement by giving 30 days prior written notice if there has been a material breach of an agreement hereof by the other party, which breach is not cured within such 30-day period.

(d)     No termination of this Agreement under subsection (b) or (c) of this Section 7 shall relieve the Investment Manager from its obligations under Section 1.

8.  Indemnification.

(a)     AIA shall indemnify, hold harmless, and defend the Investment Manager, the Fund and their respective principals and affiliates from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by AIA; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or

3

00025

on behalf of, AIA; provided, however that the duty to indemnify shall not apply to information regarding the Investment Manager, the Fund or their respective principals and affiliates that was approved in advance by Investment Manager or was based upon information provided in writing to AIA by the Investment Manager.

(b)     The Investment Manager and the Fund, jointly and severally, shall indemnify, hold harmless, and defend AIA, its principals and its affiliates, from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by Investment Manager; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or on behalf of, Investment Manager; provided, however, that the duty to indemnify shall not apply to information regarding AIA or its principals and affiliates that was approved in advance by AIA or was based upon information provided in writing to the Investment Manager by AIA.

9.  Miscellaneous.

(a)     Confidential Matters.  AIA and Investment Manager each shall use its best effort to safeguard the secrecy and confidentiality of all confidential and proprietary information of the other party (including the names and other identifying information of persons solicited by AIA) and shall not disclose any of the foregoing to any third party except:

(i)     information which at the time of disclosure is part of the public knowledge or literature that is readily accessible to such third party; provided that any combination of features shall not be deemed within this exception merely because individual features are part of the public knowledge or literature that is readily accessible to such third party, but only if the combination itself and its principle of operations are part of the public knowledge or literature that is readily accessible to such third party;

(ii)     information required by law to be disclosed; or

(iii)     as otherwise may be consented to by such other party or permitted by the terms of this Agreement.

(b)     Assignment.  This Agreement shall not be assigned by either party without the prior express written consent of the other party.

(c)     Amendment; Waiver.  This Agreement shall not be amended except by a writing signed by the parties hereto.  No waiver of any provision of this Agreement shall be implied from any course of dealing between the parties hereto or from any failure by either party hereto to assert its rights hereunder on any occasion or series of occasions.

(d)     Severability.  If any provision of this Agreement, or the application of any provision to any person or circumstance, shall be held to be inconsistent with any present or future law, ruling, rule, or regulation of any court or governmental or regulatory authority having jurisdiction over the subject matter hereof, such provision shall be deemed to be rescinded or modified in accordance with such law, ruling, rule, or regulation, and the remainder of this

4

00026

Agreement, or the application of such provision to persons or circumstances other than those as to which it shall be held inconsistent, shall not be affected thereby.

(e)    Notices.  Any notice required or desired to be delivered under this Agreement shall be in writing and shall be delivered to each of the parties at its address set forth on the signature page hereof or at such other address as a party designates in writing.

(f)    Governing Law.  This Agreement shall be governed by and construed in accordance with the law of the State of New York, U.S.A., excluding the choice of law and conflicts of law provisions thereof.

(g)    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(h)    Headings.  Headings to sections and subsections in this Agreement are for the convenience of the parties only and are not intended to be a part of or to affect the meaning or interpretation hereof.

(i)    No Third Party Beneficiaries.  This Agreement is not intended to and shall not convey any rights to persons who are not a party to this Agreement.

(j)    Survival.  Sections 1, 7(d), 8 and 9 shall survive the termination of this Agreement.


[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

00027

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS LIMITED

ARGENT MANAGEMENT CO. LLC

By: _____
John O'Donnell, Director

By: _____
John R. Gordon, Vice President

Address:
Suite 60, Grosvenor Close
Shirley Street
Nassau
P.O. Box N-75121

Address:
500 West Putnam Avenue – Third Floor
Greenwich, Connecticut 06830

6

00028

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS
LIMITED

ARGENT MANAGEMENT CO. LLC

By: _____
    John O'Donnell, Director

By: _____
    John R. Gordon, Vice President

Address:
Suite 60, Grosvenor Close
Shirley Street
Nassau
P.O. Box N-75121

Address:
500 West Putnam Avenue – Third Floor
Greenwich, Connecticut 06830

00029

# EXHIBIT B

| | Client Name |
|---|---|
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SANominee Thomas Robert Burns |
| Access International | EFG Private Bank SANominee Thomas Robert Burns |
| Access International | EFG Private Bank SANominee Thomas Robert Burns |
| Access International | EFG Private Bank SANominee Thomas Robert Burns |
| Access International | EFG Private Bank SANominee Thomas Robert Burns |
| Access International | EFG Private Bank SANominee Thomas Robert Burns |

| FundLegalName | MONTH | SumOfTotal Payout |
|---|---|---|
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/01 | $ 71.88 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/02 | $ 42.49 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/03 | $ 36.91 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/04 | $ 26.11 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/05 | $ 90.81 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/06 | $ 26.80 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/07 | $ 38.03 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/08 | $ 39.94 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/09 | $ 68.75 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/10 | $ 47.76 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/11 | $ 26.23 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/12 | $ 90.58 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/01 | $ 170.95 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/02 | $ 101.05 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/03 | $ 87.78 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/04 | $ 62.10 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/05 | $ 215.99 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/06 | $ 63.74 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/07 | $ 90.44 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/08 | $ 94.99 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/09 | $ 163.52 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/10 | $ 113.59 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/11 | $ 45.04 |
| Argent LowLev Convertible Arbitrage Fund LLC | 2006/12 | $ 155.56 |
| Veritas High Yield Arbitrage Fund II LLC | 2006/01 | $ 18.69 |
| Veritas High Yield Arbitrage Fund II LLC | 2006/02 | $ 18.86 |
| Veritas High Yield Arbitrage Fund II LLC | 2006/03 | $ 19.01 |
| Veritas High Yield Arbitrage Fund II LLC | 2006/04 | $ 18.99 |
| Veritas High Yield Arbitrage Fund II LLC | 2006/05 | $ 17.94 |
| Veritas High Yield Arbitrage Fund II LLC | 2006/06 | $ 17.84 |

| Ending Equity Bal | Total Payout 06 |
|---|---|
| $ 96,703.08 | |
| $ 97,496.49 | |
| $ 98,072.21 | |
| $ 98,034.09 | |
| $ 101,371.16 | |
| $ 101,217.61 | |
| $ 101,747.56 | |
| $ 102,363.15 | |
| $ 103,547.52 | |
| $ 103,930.65 | |
| $ 142,920.90 | |
| $ 144,960.62 | |
| $ 229,995.43 | |
| $ 231,882.45 | |
| $ 233,251.74 | |
| $ 233,161.08 | |
| $ 241,097.84 | |
| $ 240,732.65 | |
| $ 241,993.07 | |
| $ 243,457.16 | |
| $ 246,274.03 | |
| $ 247,185.24 | |
| $ 245,451.12 | |
| $ 248,954.11 | |
| $ 113,166.81 | |
| $ 113,892.06 | |
| $ 113,958.19 | |
| $ 107,636.93 | |
| $ 107,029.39 | |
| $ 106,885.26 | |

| | Client |
|---|---|
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank #358117Nominee Account 358117 |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Elite Class C |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |
| Access International | Partners Group |

| Fund | Year/Month | Payout |
|---|---|---|
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/01 | $ 271.77 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/02 | $ 139.99 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/03 | $ 90.65 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/04 | $ 26.15 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/05 | $ 76.56 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/06 | $ 26.07 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/07 | $ 25.68 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/08 | $ 25.01 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/01 | $ 466.74 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/02 | $ 240.41 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/03 | $ 155.68 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/04 | $ 44.91 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/05 | $ 131.49 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/06 | $ 44.77 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/07 | $ 44.10 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/08 | $ 42.96 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/09 | $ 38.77 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/10 | $ 39.62 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/11 | $ 40.20 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2007/12 | $ 33.87 |
| Elite Class J | 2007/02 | $ 5,170.73 |
| Elite Class J | 2007/03 | $ 6,693.72 |
| Elite Class J | 2007/04 | $ 2,032.44 |
| Elite Class J | 2007/05 | $ 2,721.71 |
| Elite Class J | 2007/07 | $ 2,998.34 |
| Elite Class J | 2007/08 | $ 3,481.86 |
| Elite Class J | 2007/09 | $ 2,864.46 |
| Elite Class J | 2007/10 | $ 3,024.36 |
| Elite Class J | 2007/11 | $ 2,941.41 |
| Elite Class J | 2007/12 | $ 3,173.36 |
| Partners Group | 2007/01 | $ 78,698.54 |
| Partners Group | 2007/02 | $ 65,404.35 |
| Partners Group | 2007/03 | $ 24,621.26 |
| Partners Group | 2007/04 | $ 41,653.77 |
| Partners Group | 2007/05 | $ 23,380.20 |
| Partners Group | 2007/06 | $ 51,286.20 |
| Partners Group | 2007/07 | $ 18,218.40 |
| Partners Group | 2007/08 | $ 17,608.60 |
| Partners Group | 2007/09 | $ 12,609.60 |
| Partners Group | 2007/10 | $ 15,120.89 |
| Partners Group | 2007/11 | $ 13,297.60 |
| Partners Group | 2007/12 | $ 13,172.83 |

| Ending Equity Balance | Total Payout 07 |
|---|---|
| $ 152,603.32 | |
| $ 155,677.46 | |
| $ 156,911.12 | |
| $ 155,277.60 | |
| $ 156,420.56 | |
| $ 154,054.41 | |
| $ 150,081.16 | |
| $ 135,458.26 | |
| $ 262,079.61 | |
| $ 267,359.11 | |
| $ 269,477.79 | |
| $ 266,672.40 | |
| $ 268,635.30 | |
| $ 264,571.70 | |
| $ 257,748.07 | |
| $ 232,634.84 | |
| $ 237,698.53 | |
| $ 241,178.18 | |
| $ 203,246.27 | |
| $ 177,432.89 | |
| $ 8,525,000.00 | |
| $ 13,244,309.00 | |
| $ 18,893,693.00 | |
| $ 21,937,704.00 | |
| $ 23,965,946.00 | |
| $ 28,115,668.00 | |
| $ 26,959,605.00 | |
| $ 29,209,337.00 | |
| $ 28,877,638.00 | |
| $ 22,607,815.00 | |
| $ 110,998,432.00 | |
| $ 112,042,091.00 | |
| $ 102,879,857.00 | |
| $ 103,259,326.00 | |
| $ 102,912,240.00 | |
| $ 103,797,663.00 | |
| $ 103,562,629.00 | |
| $ 102,582,727.00 | |
| $ 79,056,836.00 | |
| $ 80,336,497.00 | |
| $ 81,328,247.00 | |
| $ 75,677,948.00 | |

| | Client |
|---|---|
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |
| Access International | EFG Private Bank SA - EFG Securities Ltd. A/C #318688Nominee Tai Lan Chan |

| Fund | Year/Month | Payout |
|---|---|---|
| Argent Classic Convertible Arbitrage Fund L.P. | 2008/01 | $ 29.57 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2008/02 | $ 26.24 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2008/03 | $ 19.62 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2008/04 | $ 25.21 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2008/05 | $ 24.65 |
| Argent Classic Convertible Arbitrage Fund L.P. | 2008/06 | $ 24.98 |

| Ending Equity Bal | Total Payout 08 |
|---|---|
| $          157,456.36 | |
| $          117,731.00 | |
| $          151,268.47 | |
| $          147,928.96 | |
| $          149,876.40 | |
| $          151,700.42 | |

# EXHIBIT C

**Andrew Stone**

| | |
|---|---|
| **From:** | Tim Bowman [tbowman@argentfundsgroup.com] |
| **Sent:** | Thursday, December 18, 2008 2:07 PM |
| **To:** | Andrew Stone |
| **Subject:** | FW: Access Fees |

**Attachments:**    Access 2007.xls



Access 2007.xls
(515 KB)

Andy,

Please see below - is this ok?

Thanks,
Tim

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Tuesday, December 16, 2008 12:02 PM
To: Timothy Bowman
Subject: FW: Access Fees

Sorry Tim

Can you hold off paying the fees for the moment. I'll let you know when to send the money
if that's OK.

Regards

Simon

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: 16 December 2008 16:06
To: 'Tim Bowman'
Subject: FW: Access Fees

 Hi Tim

Have you had a look at the fees e-mail?

Regards

Simon

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: 15 December 2008 12:07
To: 'Tim Bowman'
Subject: FW: Access Fees

Hi Tim

Thanks for the file, I agree everything except that I have a client via SEB Investment
Bank Luxembourg with shares of 11 207.54 in Argent Classic A and
3 933.37 shares in Argent at Dec 31 2006.

They also investmed $800K June 1 2007, $300K July 1 2007 & $500K Aug 1 2007 in VERITAS
CREDIT OPPORTUNITIES FUND which isn't shown.

1

Can you have a look and let me know.

I attach the wiring instructions so that we can get this money sorted out then deal with the account listed above.

Thanks for your assistance.

Regards

Simon


-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 11 December 2008 00:19
To: 'Simon Bowen'
Cc: Leo Cheung
Subject: RE: Access Fees

Hi Simon,

I hope things are better across the pond! Please find attached the calculations of what Argent owes Access for 2007.  Please review and let me know if you are OK with amount and we will process payment.  Also, please note that I used 15% payout for 2007 for Argent and 20% payout for Veritas.
I believe that the agreement was changed to 20% starting in January 2008 and going forward.

Thanks,
Tim
-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 9:15 AM
To: Timothy Bowman
Subject: RE: Access Fees

Thanks Tim

-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 10 December 2008 14:10
To: 'Simon Bowen'
Subject: RE: Access Fees

I am working on it now!

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 8:54 AM
To: Timothy Bowman
Subject: Access Fees

Hi Tim

Really really need the fee schedule.

Thanks & regards

Simon Bowen
AIA Europe Ltd
5/11 Lavington Street
London
SE1 0NZ

```
Tel : + 44 (0)20 7945 6156
Fax : + 44 (0)20 7945 6159
```

# EXHIBIT D

**The MarketWatch iPhone App is now available.**   Market Watch   DOWNLOAD THE APP ▶

## THE WALL STREET JOURNAL.
WSJ.com

FEBRUARY 6, 2009, 10:42 AM ET

# Madoff and the Royals: Tapping Into Old Money?



You'd think the British Royal Family wouldn't be the ideal Madoff target. After all, they are not a prominent Jewish family. And how often do they vacation in Palm Beach? Ah, but they do have money.

Bloomberg published this a report, citing whistle blower Harry Markopolos, who said that Prince Charles, was targeted for the alleged multi billion dollar Ponzi scheme through the use of Mr. Madoff's recruiters.

Says Bloomberg: Prince Michael of Yugoslavia was an executive of a so- called Madoff feeder fund, Access International Advisors Ltd., when he met Prince Charles and his sons at a polo field during a marketing tour in 2002, Markopolos said. (Access partner Philippe Junot is the former husband of Princess Caroline of Monaco and Prince Michael was an investor relations executive, according to the firm's marketing documents.)

Unlike some European dignitaries, though, Prince Charles put no money with Madoff, an unnamed source told Bloomberg.

Markopolos made the statement in documents prepared for the SEC and documents were released as part of his testimony to a congressional panel on Wednesday (Here's a link to his 311-page file). "It is my belief that Access likely had several royal families as clients invested in Madoff," Markopolos is quoted in the story. "He was truly masterful in using his feeder funds to draw in people close in make-up to the owners of the feeder funds. In this way he was able to expand his affinity victims to those beyond that of the Jewish community."

Liliane Bettencourt, the world's wealthiest woman, did lose money after she entrusted part of her $22.9 billion fortune to Access, two people told Bloomberg.

**Correction:** As a reader points out Prince Charles's formal title is Prince Charles of Wales. An earlier version of the post called him Prince Charles of England.

Copyright 2008 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com



**Bloomberg.com**

## U.K.'s Prince Charles Targeted by Madoff Marketer, Witness Says

**Share**          | **Email** | **Print** | A A **A**

By Linda Sandler



Feb. 6 (Bloomberg) -- Britain's **Prince Charles** was targeted through **Bernard Madoff**'s use of high-profile recruiters, whistleblower **Harry Markopolos** said in documents provided to U.S. lawmakers.

**Prince Michael** of Yugoslavia was an executive of a so- called Madoff feeder fund, Access International Advisors Ltd., when he met Prince Charles and his sons at a polo field during a marketing tour in 2002, Markopolos said. Prince Charles put no money with Madoff, said a person familiar with the matter. **Liliane Bettencourt**, the world's wealthiest woman, did lose money after she entrusted part of her $22.9 billion fortune to Access, two people familiar with the matter said.

"It is my belief that Access likely had several royal families as clients invested in Madoff," Markopolos said. "He was truly masterful in using his feeder funds to draw in people close in make-up to the owners of the feeder funds. In this way he was able to expand his affinity victims to those beyond that of the Jewish community."

Markopolos made the statement in documents prepared for the U.S. Securities and Exchange Commission as part of a nine-year effort to persuade the regulator to investigate Madoff. The documents were released as part of his testimony to a congressional panel on Feb. 4. Markopolos, a former chief investment officer for Rampart Investment Management in Boston, tried to replicate Madoff's declared investment strategy and said he found it didn't work.

Fabrice Goguel, a lawyer for the L'Oreal SA heiress Bettencourt, couldn't be reached by phone for comment. Prince Michael, who is 99th in line to the British throne, according to www.britroyals.com, couldn't be reached by e-mail.

List of Customers

Many Madoff victims, including Bettencourt, don't appear on a list of customers filed Feb. 4 in U.S. Bankruptcy Court in Manhattan, though the funds they invested in, such as Access, are there.

Access was majority owned by noblemen whose ancestors served as Napoleon's military officers, said Markopolos, who accompanied the fund's officials on the 2002 marketing trip, he said. Access Chief Executive Officer **Thierry Magon de La Villehuchet** was found dead in his New York office Dec. 23 after potentially losing all of the money he invested with Madoff.

Access partner **Philippe Junot** is the former husband of **Princess Caroline** of Monaco and Prince Michael was an investor relations executive, according to the firm's marketing documents.

Access in 2002 invested about 45 percent of its $1.2 billion under management with Madoff, Markopolos said. The hedge fund by last year managed $3 billion and raised the proportion of funds with Madoff to about 75 percent because Madoff seemed to be doing well, Villehuchet's brother Bertrand said in an interview with Bloomberg last month.

"He did it in the belief that it would help his investors, and the proof is that he put all of his wealth and 20 percent of mine in as well," he said.

To contact the reporter on this story: **Linda Sandler** in New York at **lsandler@bloomberg.net**.

*Last Updated: February 6, 2009 00:01 EST*



©2009 BLOOMBERG L.P. ALL RIGHTS RESERVED. Terms of Service | Privacy Policy | Trademarks

# EXHIBIT E

-----Original Message-----
From: benoitchastel@gmail.com

Date: Wed, 18 Feb 2009 16:32:12
To: Patrick Shirkey<pshirkey@argentfundsgroup.com>
Cc: Ron Fertig<rfertig@argentfundsgroup.com>; <benoitchastel@hotmail.com>
Subject: Re : RE: Access (Benoit Chastel) Finder Schedule.xls


Hi patrick,

When do you execpt to do the wire? I moved to Europe and i need to close my bank as soon as possible.

Thanks

Benoit
Ce message a été envoyé depuis un terminal BlackBerry de Bouygues Telecom

-----Original Message-----
From: "Myles Edwards" <medwards@aiallc.us>

Date: Mon, 16 Feb 2009 12:37:30
To: Benoit Chastel<bchastel@aiacapitalmarkets.com>; Patrick Shirkey<pshirkey@argentfundsgroup.com>
Cc: Ron Fertig<rfertig@argentfundsgroup.com>; <benoitchastel@hotmail.com>; Guy de La Tour du Pin
Verclause<gverclause@aiacapitalmarkets.com>
Subject: RE: Access (Benoit Chastel) Finder Schedule.xls


Dear Patrick:

On behalf of Access International Advisors, please accept this message confirming that we do not have any objection to the payment of fees directly to Mr. Benoit Chastel.

Best Regards,
Myles J. Edwards, Esq.

Chief Compliance Officer & General Counsel
Direct# 212.223.7167
Facsimile# 212.223.3463
Mobile# 973.650.4385

CONFIDENTIALITY NOTICE: This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies. Any unauthorized use or dissemination is prohibited. E-mails are susceptible to alteration. The integrity of this message cannot be guaranteed on the Internet, AIA Capital Markets LLC shall not be liable for the content of this message. If you are not the intended recipient of this message, please delete it and notify the sender at medwards@aiallc.us. Thank you.


-----Original Message-----
From: Benoit Chastel
Sent: Saturday, February 14, 2009 7:55 AM
To: Patrick Shirkey
Cc: Ron Fertig; Myles Edwards; benoitchastel@hotmail.com
Subject: RE : Access (Benoit Chastel) Finder Schedule.xls

Dear Patrick,

Myles is going to confirm you on Monday that the money for the fees can be wire to me.

here is my banking information

Benoit Chastel
routing #: 021000089
account #: 88775555

Best regards


benoit Chastel


-------- Message d'origine--------
De: Patrick Shirkey [mailto:pshirkey@argentfundsgroup.com]
Date: mar. 27/01/2009 11:56
À: Benoit Chastel
Cc: Ron Fertig; Myles Edwards
Objet : Access (Benoit Chastel) Finder Schedule.xls

Benoit,

Please see the attached schedule. Argent will pay Access in total once
it is determined where and when the payment will be sent. If you have
questions concerning calculation please e-mail or call me and for
payment please talk with Miles Edwards at your firm.

Thanks,

Patrick



--
Benoit Chastel

# EXHIBIT F

## ACCESS INTERNATIONAL ADVISORS LTD.

February 19, 2009

Mr. Ronald Fertig
Chief Operating Officer
Argent Funds Group
500 West Putnam Avenue
Greenwich, CT 06830-6086

RE:    Wiring of Fees

Dear Mr. Fertig:

This correspondence is in reference to the year-end 2007 fees which are being held by Argent on behalf of Access International Advisors Ltd ("Access").

Access as a Bahamian corporate entity is in the process of being reorganized and therefore is not in a position to receive these fees.

Therefore, please accept this correspondence as authorization to wire all fees currently owed to Access to Access Partners SA whose address is 49 Boulevard Prince Henri, L-1724 Luxembourg:

Bank name: ING Luxembourg
Bank address: 52 Route d'Esch, L-2965 Luxembourg
Account name: Access Partners SA
IBAN N°: LU91 0141 1382 9870 3010
Swift: CELLLULL
Reference: Argent

Please also confirm the amount that is being wired.

I appreciate your attention to this matter. Thank you.

Best Regards,


Patrick Littaye
Director

# EXHIBIT G

ACCESS INTERNATIONAL ADVISORS LIMITED
Suite 61 Grosvenor Close,
Shirley st., PO Box N-7521
Nassau, bahamas

March 26, 2009

Mac Mahan Securities
Attention to: Mr A. Stone
500 West Putman Avenue – 3rd Floor
CT 06830-6 Greenwitch Connecticut
United States of America (USA)

Re: ARGENT funds

Dear Mr. Stone,

This letter is in reference to the ARGENT funds, managed by your company, and our payment as
introducing agent to those funds. (Amount which we agreed upon: USD 1.190.678)

On behalf of Access International Advisors Limited, please accept this letter as authorization to pay
the outstanding introducing fees to our attorney and escrow agent of our account.

This payment will discharge your obligations in our favor.

Bank of America, New York
Swift:          BOFAUS3N
Account:        ING LUXEMBOURG SA, 52 route d'Esch, L-2965 LUWEMBOURG
Swift:          CELLLULL
Account Nr:     655 08 67 945
Ref payment DELANDMETER/IBAN LU 17 0141 8340 7730 3010/ Access International Advisors/
Argent

Kind regards,

The director,
Mr Patrick LITTAYE

Copy:  Me Pierre Delandmeter
       Mr Guy de la Tour du Pin

# EXHIBIT H

## KENT, BEATTY & GORDON, LLP

ATTORNEYS AT LAW
425 PARK AVENUE
NEW YORK, NY 10022-3598

JACK A. GORDON

ADMITTED IN N.Y. AND N.J.

E-MAIL
JAG@KBG-law.com

TELEPHONE
(212) 421-4300

TELECOPIER
(212) 421-4303

WEBSITE
www.KBG-law.com

**FOR SETTLEMENT PURPOSES ONLY
PURSUANT TO F.R.E. 408**

August 11, 2009

**Via Email and Federal Express**
Andrew Stone, Esq.
Argent Management Co. LLC
500 West Putnam Avenue
Greenwich, CT 06830-6086

Re:   *Compensation Due Access International Advisors Limited*

Dear Mr. Stone:

As you know, this firm has been retained to represent Access International Advisors Limited ("Access") in connection with pursuit of the monies owed it by your firm, Argent Management Co. LLC ("Argent"), pursuant to that certain Sourcing Agreement dated as of August 16, 2001 and as amended. These fees, which amount to approximately US$1.2mm, have been due and owing pursuant to the Sourcing Agreement since December of last year.

We understand that Mr. Patrick Littaye spoke with Mr. David Bruce McMahan about the monies due Access and that, during that call, Mr. Littaye informed Mr. McMahan that our firm would be in contact with you regarding the commencement of an action against Argent. To this end, please find enclosed a draft complaint for your consideration. In it, you will note that the amount due has repeatedly been admitted by Argent. You will also note that interest on the amount due has been and continues to accrue at the rate of nine percent (9%) per annum, and is currently in excess of $69k. In addition, you will note that the Sourcing Agreement contains a "fee-shifting provision," such that we will look to Argent for the attorneys' fees and expenses incurred by Access in connection with our efforts to secure a judgment against Argent on this undisputed debt. We provide this draft complaint to you to afford you one final opportunity to resolve this matter. To this end, we are prepared to meet with you during the week of August 24 (except for August 26) at a mutually convenient location so as to resolve this matter prior to commencement of the action. Please let us know by the end of this week (*i.e.*, on or before August 14) if you are interested in such a meeting, and, if so, when and where you would be willing to meet.

KENT, BEATTY & GORDON, LLP
ATTORNEYS AT LAW

Andrew Stone, Esq.
Argent Management Co. LLC
August 11, 2009
Page 2


        Thank you in advance for your prompt attention to this request.  We look forward to hearing from you.

                        Very truly yours,

                        Jack A. Gordon

enclosure

cc:    Myles J. Edwards, Esq. (Access International Advisors Limited)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ACCESS INTERNATIONAL ADVISORS
LIMITED,

                                 Plaintiff,

                 v.

ARGENT MANAGEMENT CO. LLC,

                              Defendant.

09 Civ. _____

## COMPLAINT

**Jury Trial Demanded**

---

PLAINTIFF ACCESS INTERNATIONAL ADVISORS LIMITED ("AIA"), by and through its undersigned attorneys, KENT, BEATTY & GORDON, LLP, complains of DEFENDANT ARGENT MANAGEMENT CO. LLC ("Argent") as follows:

## NATURE OF THE ACTION

1.      This is a breach of contract action necessitated by defendant Argent's inexplicable refusal to pay plaintiff AIA certain finder's fees due to it pursuant to a written contract between the parties.  In the months preceding this lawsuit, Argent repeatedly admitted that it owes AIA approximately $1.2 million in contractual finder's fees — and has owed that money since December of last year.  Argent has also repeatedly acknowledged that it has no plausible reason not to pay.  Indeed, Argent has repeatedly misrepresented to AIA that the money would be wired "imminently."  Having finally tired of Argent's empty promises to remit payment, AIA now brings this action to recover the monies rightfully due to it, which include pre-judgement interest since December 2008, and AIA's costs and attorneys' fees incurred in prosecuting this action, as provided in the parties'

written contract.  New York law provides the rule of decision in this diversity action because the parties' contract contains a New York choice of law clause.

## THE PARTIES, JURISDICTION AND VENUE

2.      Plaintiff AIA is a corporation formed under the laws of the Bahamas with its principal place of business in the Bahamas.

3.      Upon information and belief, defendant Argent is a limited liability company formed under the laws of Delaware with its principal place of business in Greenwich, Connecticut, and with only two members, David Bruce McMahan and Jay Toby Glassman, both of whom are citizens of the State of New York.  Argent is therefore deemed a citizen of New York for purposes of diversity jurisdiction.

4.      Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the plaintiff is an alien, the defendant is a citizen of New York, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c) because, upon information and belief, defendant Argent regularly transacts business in this district and is therefore subject to personal jurisdiction here.

## CLAIM FOR RELIEF
### (Breach of Contract)

6.      Argent is an SEC-registered investment adviser.  As such, it manages various hedge funds, and collects fees based on the performance of its funds and the total amount of money it has under management.

7.      AIA is in the business of raising capital from international accredited investors.  It has a long-standing relationship with Argent dating back to at least 1997, and since that time has

2

successfully helped Argent raise a significant amount of capital for its funds, including the Argent

Classic Convertible Arbitrage Fund Ltd. and the Argent LowLev Convertible Arbitrage Fund Ltd.

(referred to together as the "Fund").

     8.    On August 16, 2001, Argent and AIA entered into a written contract — entitled a

"Sourcing Agreement" — in order to formalize the terms on which AIA would continue to be

compensated for "raising capital for, and directing clients to, [Argent] for the purpose of investing

in the Fund," which the contract refers to as "Sourcing Services." (A copy of the Sourcing

Agreement is annexed hereto as Exhibit 1.)

     9.    The Sourcing Agreement provides that it "shall continue in effect until terminated."

To date, it has not been terminated, and therefore the parties remain bound by its terms. (Ex. 1, §

7(a).)

     10.    In exchange for providing Sourcing Services, the Sourcing Agreement obligates

Argent to pay AIA certain finder's fees calculated by the formula set forth in the following clause:

> In consideration for AIA providing the Sourcing Services resulting
> in investments in the Fund during the term of this Agreement
> ("Directed Investments"), [Argent] shall pay AIA 15% of (i) the
> asset-based management fees received by [Argent] from the Fund on
> Directed Investments in Type A or Type B interests and all payments
> in addition to or in lieu of such fees, and (ii) the performance-based
> fees received by [Argent] from the Fund on Directed Investments in
> Type A or Type B interests and all payments in addition to or in lieu
> of such fees ((i) and (ii) collectively, the "Manager Fees" and AIA's
> 15% thereof, the "AIA Fees").

(*Id.*, § 1.)

     11.    The Sourcing Agreement further provides that Argent "shall pay the AIA Fees to AIA

once a year in December for the 12 months ended the prior November 30th." (*Id.*) Thus, the AIA

Fees are calculated based on a November-to-November fiscal year, and become due and payable

3

approximately one year after each fiscal-year-end. (For example, the AIA Fees earned during the period from November 30, 2002 through November 30, 2003 were due and payable in December 2004.)

12.     Accordingly, in each December that the Sourcing Agreement has been in effect, Argent and AIA have jointly reviewed Argent's books and records in order to calculate the appropriate AIA Fees. Argent paid the fees due AIA for the fiscal years ending during 2002 to 2006.

13.     Consistent with their usual practice, on December 10, 2008, Simon Bowen, an accountant with AIA, emailed Argent's Chief Accounting Officer, Tim Bowman, requesting a fee schedule for the fiscal year ending November 30, 2007. Bowman replied within hours, emailing a spreadsheet to Bowen and writing, "Please find attached the calculations of what Argent owes [AIA] for 2007. Please review and let me know if you are OK with amount and we will process payment." (A copy of the relevant email string and its attachment is annexed hereto as Exhibit 2.)

14.     According to Argent's own admission, it owes AIA USD $1,190,678 in AIA Fees for 2007, calculated in accordance with the 15% formula set forth in Section 1 of the Sourcing Agreement. Argent, however, did not remit that sum to AIA in December 2008, thus materially breaching the Sourcing Agreement.

15.     In June 2009, AIA contacted Argent to follow-up on the delinquent payment. During numerous telephone conversations between the parties, Argent's general counsel, Andrew Stone, Esq., repeatedly admitted that the AIA Fees for 2007 were past due and owing, and promised that the money would be wired shortly. For instance, on June 23, 2009, AIA's general counsel had a telephone conversation with Stone in which Stone apologized for the delay, stated "we [Argent] are

4


not disputing the debt," and represented to AIA that the money would be wired "by the end of the week."

16.     The "end of the week" came and went without payment, and on July 2, 2009 AIA's outside counsel sent a formal demand letter to Argent. Argent did not write back, but in an ensuing telephone conversation on July 13, 2009, Stone told AIA that there was "no contest on the fact that the fees are due and owing," and then asked AIA to provide Argent with a letter stating that AIA was not subject to any pending or threatened claims. Stone promised that upon receipt of such a letter, the AIA Fees would be wired in "days or less." AIA acceded to Stone's request by sending the letter on July 13, 2009, but Argent still did not remit payment. After that, Stone stopped returning AIA's calls.

17.     Accordingly, AIA is now forced to bring this action to recover the monies that Argent admits it owes AIA but refuses to pay. Argent owes AIA the principal sum of at least USD $1,190,678.

18.     Furthermore, the Sourcing Agreement provides that "[Argent] and the Fund, jointly and severally, shall indemnify, hold harmless, and defend AIA, its principals and affiliates, from and against any ... cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by [Argent]; ... ." (Ex. 1 § 8(b).) Since AIA has now been forced to incur attorneys' fees and other expenses as a result of Argent's material breach, it is entitled to recover these fees and expenses from Argent.

## RELIEF DEMANDED

WHEREFORE, Plaintiff Access International Advisors Limited demands judgment on its Claim for Relief against Defendant Argent Management Co. LLC as follows:

A.     Awarding Access International Advisors Limited damages in an amount to be determined at trial but in no event less than $1,190,678.00, plus pre-judgment interest;

B.     Declaring that Argent Management Co. LLC has materially breached the Sourcing Agreement;

C.     Awarding Access International Advisors Limited its costs and expenses, including all reasonable attorneys' fees, incurred in collecting the debt at issue in this action; and

D.     Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all the issues so triable.

Dated:  New York, New York
        August __, 2009

KENT, BEATTY & GORDON, LLP

**DRAFT**

By: _____
    Jack A. Gordon, Esq.
    Joshua B. Katz, Esq.
    425 Park Avenue, The Penthouse
    New York, New York 10022
    (212) 421-4300

*Attorneys for Plaintiff Access
International Advisors Limited*

6

Exhibit 1

## SOURCING AGREEMENT

AGREEMENT, made as of the 16th day of August, 2001, by and between ACCESS INTERNATIONAL ADVISORS LIMITED, a corporation organized under the laws of the Bahamas ("AIA"); and ARGENT MANAGEMENT CO. LLC (the "Investment Manager").

### WITNESSETH

WHEREAS, AIA is engaged in the business, among others, of raising capital for investment managers, investment advisors and investment funds; and

WHEREAS, the Investment Manager serves as an investment manager and/or consultant of Argent Classic Convertible Arbitrage Fund (Bermuda) Ltd. and Argent LowLev Convertible Arbitrage Fund Ltd. (collectively the "Fund") and may manage the investments of clients directly in individual accounts and/or indirectly as the manager of other private investment funds and pooled investment vehicles (each, an "Account"); and

WHEREAS, the Investment Manager desires that AIA provide assistance, outside of the United States, to the Investment Manager in raising capital for, and directing clients to, the Investment Manager for the purpose of investing in the Fund (collectively, the "Sourcing Services"); and AIA is willing from time-to-time to provide the Sourcing Services to the Investment Manager.

NOW, THEREFORE, for and in consideration for the premises and the mutual covenants hereinafter contained, the parties hereto agree as follows:

1.   AIA Fees.  In consideration for AIA providing the Sourcing Services resulting in investments in the Fund during the term of this Agreement ("Directed Investments"), the Investment Manager shall pay AIA 15% of (i) the asset-based management fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees, and (ii) the performance-based fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees ((i) and (ii) collectively, the "Manager Fees" and AIA's 15% thereof, the "AIA Fees"). AIA will be entitled to receive from the Investment Manager AIA Fees with respect to Directed Investments in Type C interests only if both parties hereto so agree by separate written agreement.

The Investment Manager shall pay the AIA Fees to AIA once a year in December for the 12 months ended the prior November 30th.

In the event AIA introduces to the Fund or the Investment Manager an investor who becomes a client of the Investment Manager by investing assets in an Account, AIA shall be entitled to 15% of all asset based or performance-based fees received by the Investment Manager from the Fund on such invested assets, unless such invested assets are or become subject to another written agreement between AIA and the Investment Manager.

2.   Agents.  AIA, at its own expense, may employ agents and representatives to assist it in performing the Sourcing Services.

3.  Representation, Warranties and Covenants.  Each of the parties represents, warrants and covenants to the other party as follows:

(a)    It is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and in each other jurisdiction in which the nature or conduct of its business requires such qualification.

(b)    It has full authority under applicable law to perform its obligations under this Agreement.

(c)    This Agreement has been duly and validly authorized, executed and delivered on its behalf and constitutes a legal, valid and binding agreement enforceable against such party in accordance with its terms.

(d)    It has all governmental, regulatory and exchange approvals and licenses, and has effected all filings and registrations with governmental agencies required to conduct its business and to act as described herein, and the performance of such obligations will not contravene or result in a breach of any provision of its certificate of incorporation, by-laws or any agreement, instrument, order, law or regulation binding upon it.

(e)    The foregoing and following representations and warranties shall be continuing during the term of this Agreement, and if at any time any event shall occur which could make any of the foregoing or following incomplete or inaccurate, it shall promptly notify the other party of the occurrence of such event.

4.  Additional Representations, Warranties and Covenants of Investment Manager.  The Investment Manager represents, warrants and covenants to AIA as follows:

(a)    It is not, and for so long as this Agreement is in effect, shall not be nor required to be registered as an investment adviser under the Investment Advisers Act of 1940, as amended.

(b)    There is, and at all times during the term hereof, there will be, no differential in the fees charged by the Investment Manager for a client introduced to the Investment Manager or the Fund by AIA and an investor who independently invests in the Fund (without the aid of a solicitor).

(c)    It shall, at its own expense, provide to AIA, and in sufficient copies as AIA may reasonably request, the following: (i) a current private placement memorandum with respect to the Fund (the "Memorandum") and (ii) any current sales literature prepared by or on behalf of the Fund ("Sales Literature").  The Investment Manager represents, warrants and covenants that the Memorandum and each item of Sales Literature does not, and will not at any time, contain any untrue statement of material fact or omit to state a material fact necessary to make statements contained therein, in light of the circumstances under which such statements were made, not misleading.

2

5.  Additional Representations, Warranties and Covenants of AIA. AIA represents, warrants and covenants to the Investment Manager as follows:

(a)     AIA shall furnish Soliciting Services hereunder only pursuant to the terms and conditions set forth herein and pursuant to written instructions that may be provided to it from time to time by the Investment Manager or by a person that AIA reasonably believes is authorized to act on behalf of the Investment Manager. AIA will not make any solicitation in the United States.

(b)     AIA shall perform its duties in a manner consistent with any applicable laws and regulations to which it may be subject. Further, AIA shall perform its duties only in those jurisdictions in which it may lawfully perform its duties (e.g., AIA shall, prior to performing its duties in any jurisdiction, obtain any licenses or other qualifications required by such jurisdiction).

6.  AIA and Investment Manager Independent. AIA and Investment Manager each shall be deemed to be an independent contractor with respect to the other and, unless otherwise expressly provided herein or with the prior written authorization of the other, neither party shall have authority to act for or represent the other, its affiliates, officers, directors or employees in any way and shall not otherwise be deemed to be an agent of the other. Nothing contained herein shall create or constitute AIA or the Investment Manager as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, nor shall be deemed to confer on either of them any express, implied, or apparent authority to incur any obligation or liability on behalf of any other.

7.  Term and Termination.

(a)     This Agreement shall continue in effect until terminated.

(b)     Either party may terminate this Agreement by giving at least 90 days prior written notice to the other party of its intention to terminate this Agreement effective as of such date. No such termination shall relieve the Investment Manager from its obligations under Section 1.

(c)     Either AIA or Investment Manager may terminate this Agreement by giving 30 days prior written notice if there has been a material breach of an agreement hereof by the other party, which breach is not cured within such 30-day period.

(d)     No termination of this Agreement under subsection (b) or (c) of this Section 7 shall relieve the Investment Manager from its obligations under Section 1.

8.  Indemnification.

(a)     AIA shall indemnify, hold harmless, and defend the Investment Manager, the Fund and their respective principals and affiliates from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by AIA; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or

3

on behalf of, AIA; provided, however that the duty to indemnify shall not apply to information regarding the Investment Manager, the Fund or their respective principals and affiliates that was approved in advance by Investment Manager or was based upon information provided in writing to AIA by the Investment Manager.

(b)    The Investment Manager and the Fund, jointly and severally, shall indemnify, hold harmless, and defend AIA, its principals and its affiliates, from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by Investment Manager; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or on behalf of, Investment Manager; provided, however, that the duty to indemnify shall not apply to information regarding AIA or its principals and affiliates that was approved in advance by AIA or was based upon information provided in writing to the Investment Manager by AIA.

9.    Miscellaneous.

(a)    Confidential Matters. AIA and Investment Manager each shall use its best effort to safeguard the secrecy and confidentiality of all confidential and proprietary information of the other party (including the names and other identifying information of persons solicited by AIA) and shall not disclose any of the foregoing to any third party except.

(i)    information which at the time of disclosure is part of the public knowledge or literature that is readily accessible to such third party; provided that any combination of features shall not be deemed within this exception merely because individual features are part of the public knowledge or literature that is readily accessible to such third party, but only if the combination itself and its principle of operations are part of the public knowledge or literature that is readily accessible to such third party;

(ii)    information required by law to be disclosed; or

(iii)    as otherwise may be consented to by such other party or permitted by the terms of this Agreement.

(b)    Assignment. This Agreement shall not be assigned by either party without the prior express written consent of the other party.

(c)    Amendment; Waiver. This Agreement shall not be amended except by a writing signed by the parties hereto. No waiver of any provision of this Agreement shall be implied from any course of dealing between the parties hereto or from any failure by either party hereto to assert its rights hereunder on any occasion or series of occasions.

(d)    Severability. If any provision of this Agreement, or the application of any provision to any person or circumstance, shall be held to be inconsistent with any present or future law, ruling, rule, or regulation of any court or governmental or regulatory authority having jurisdiction over the subject matter hereof, such provision shall be deemed to be rescinded or modified in accordance with such law, ruling, rule, or regulation, and the remainder of this

4

Agreement, or the application of such provision to persons or circumstances other than those as to which it shall be held inconsistent, shall not be affected thereby.

(e)     Notices.. Any notice required or desired to be delivered under this Agreement shall be in writing and shall be delivered to each of the parties at its address set forth on the signature page hereof or at such other address as a party designates in writing.

(f)     Governing Law.  This Agreement shall be governed by and construed in accordance with the law of the State of New York, U.S.A., excluding the choice of law and conflicts of law provisions thereof.

(g)     Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(h)     Headings.  Headings to sections and subsections in this Agreement are for the convenience of the parties only and are not intended to be a part of or to affect the meaning or interpretation hereof.

(i)     No Third Party Beneficiaries.  This Agreement is not intended to and shall not convey any rights to persons who are not a party to this Agreement.

(j)     Survival.  Sections 1, 7(d), 8 and 9 shall survive the termination of this Agreement.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

5

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS LIMITED

By: _____
          John O'Donnell, Director

Address:
Suite 60, Grosvenor Close
Shirley Street
Nassau
P.O. Box N-75121

ARGENT MANAGEMENT CO. LLC

By: _____
          John R. Gordon, Vice President

Address:
500 West Putnam Avenue – Third Floor
Greenwich, Connecticut 06830

6

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS          ARGENT MANAGEMENT CO. LLC
LIMITED

By: _____    By: _____
    John O'Donnell, Director                 John R. Gordon, Vice President

Address:                                Address:
Suite 60, Grosvenor Close               500 West Putnam Avenue – Third Floor
Shirley Street                          Greenwich, Connecticut 06830
Nassau
P.O. Box N-75121

Exhibit 2

-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 11 December 2008 00:19
To: 'Simon Bowen'
Cc: Leo Cheung
Subject: RE: Access Fees

Hi Simon,

I hope things are better across the pond! Please find attached the
calculations of what Argent owes Access for 2007.  Please review and let me
know if you are OK with amount and we will process payment.  Also, please
note that I used 15% payout for 2007 for Argent and 20% payout for Veritas.
I believe that the agreement was changed to 20% starting in January 2008 and
going forward.

Thanks,
Tim

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 9:15 AM
To: Timothy Bowman
Subject: RE: Access Fees

Thanks Tim

-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 10 December 2008 14:10
To: 'Simon Bowen'
Subject: RE: Access Fees

I am working on it now!

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 8:54 AM
To: Timothy Bowman
Subject: Access Fees

Hi Tim

Really really need the fee schedule.

Thanks & regards

Simon Bowen
AIA Europe Ltd
5/11 Lavington Street
London
SE1 0NZ

Tel : + 44 (0)20 7945 6156
Fax : + 44 (0)20 7945 6159