# EXHIBIT I

| NOTICE OF APPLICATION FOR PREJUDGMENT REMEDY/CLAIM FOR HEARING TO CONTEST APPLICATION OR CLAIM EXEMPTION<br>JD-CV-53 Rev. 7-01<br>C.G.S. §§ 52-278c et seq. | STATE OF CONNECTICUT<br>**SUPERIOR COURT**<br>*www.jud.ct.gov*<br>INSTRUCTIONS TO PLAINTIFF/APPLICANT | COURT USE ONLY |
|---|---|---|

| | CLPJRA Application For PJR | CLPJRHG Contest PJR Application *(If Section III Completed)* |
|---|---|---|

1. Complete section I in connection with all prejudgment remedies EXCEPT ex parte prejudgment remedies and submit to the Clerk along with your application and other required documents.
2. Upon receipt of signed order for hearing from clerk, serve this form on defendant(s) with other required documents.

### SECTION I - CASE INFORMATION *(To be completed by Plaintiff/Applicant)*

| Judicial [X] District | Housing [ ] Session | [ ] G.A. No. _____ | COURT ADDRESS<br>**123 Hoyt Street, Stamford, CT 06905** |
|---|---|---|---|

Has a temporary restraining order been requested?   [ ] YES   [X] NO

AMOUNT, LEGAL INTEREST, OR PROPERTY IN DEMAND, EXCLUSIVE OF INTEREST AND COSTS IS ("X" one of the following)
- [ ] LESS THAN $2500
- [ ] $2500 THROUGH $14,999.99
- [X] $15,000 OR MORE

("X" if applicable)
- [X] CLAIMING OTHER RELIEF IN ADDITION TO OR IN LIEU OF MONEY DAMAGES

NAME OF CASE *(First-named plaintiff vs. First-named defendant)*
**Access International Advisors Limited v. Argent Management Co. LLC**
[ ] SEE ATTACHED FORM JD-CV-67 FOR CONTINUATION OF PARTIES

CASE TYPE *(From Judicial Branch code list)*
MAJOR: **C**    MINOR: **90**

NO. COUNTS
**2**

C L P J R A

NAME AND ADDRESS OF PLAINTIFF/APPLICANT *(Person making application for Prejudgment Remedy) (No., street, town and zip code)*
**Access International Advisors Limited, 50 Shirley Street, Nassau, Bahamas**

NAME(S), ADDRESS(ES) AND TELEPHONE NO(S). OF DEFENDANT(S) AGAINST WHOM PREJUDGMENT REMEDY IS SOUGHT *(No., street, town and zip code) (Attach additional sheet if necessary)*  **Argent Management Co. LLC, 500 West Putnam Avenue, Greenwich, CT 06830 (203-618-3400)**

NAME AND ADDRESS OF ANY THIRD PERSON HOLDING PROPERTY OF DEFENDANT WHO IS TO BE MADE A GARNISHEE BY PROCESS PREVENTING DISSIPATION

| FOR THE PLAINTIFF(S) ENTER THE APPEARANCE OF: | NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE *(No., street, town and zip code)*<br>**Zeldes, Needle & Cooper, PC, P.O. Box 1740, Bridgeport, CT 06601-1740** | | | |
|---|---|---|---|---|
| | TELEPHONE NO.<br>**203-333-9441** | JURIS NO. *(If atty. or law firm)*<br>**069695** | SIGNED | DATE SIGNED<br>**10/16/09** |

### SECTION II - NOTICE TO DEFENDANT

You have rights specified in the Connecticut General Statutes, including Chapter 903a, that you may wish to exercise concerning this application for a prejudgment remedy. These rights include the right to a hearing:

(1) to object to the proposed prejudgment remedy because you have a defense or set-off against the action or a counterclaim against the plaintiff or because the amount sought in the application for the prejudgment remedy is unreasonably high or because payment of any judgment that may be rendered against you is covered by any insurance that may be available to you;
(2) to request that the plaintiff post a bond in accordance with section 52-278d of the General Statutes to secure you against any damages that may result from the prejudgment remedy;
(3) to request that you be allowed to substitute a bond for the prejudgment remedy sought; and
(4) to show that the property sought to be subjected to the prejudgment remedy is exempt from such a prejudgment remedy.

You may request a hearing to contest the application for a prejudgment remedy, assert any exemption or make a request concerning the posting or substitution of a bond in connection with the prejudgment remedy. **The hearing may be requested by any proper motion or by completing section III below and returning this form to the superior court at the Court Address listed above.**

You have a right to appear and be heard at the hearing on the application to be held at the above court location on:

| DATE<br>11 23 09 | TIME<br>9:30 a. M. | COURTROOM<br>TBA |
|---|---|---|

### SECTION III - DEFENDANT'S CLAIM AND REQUEST FOR HEARING *(To be completed by Defendant)*

I, the defendant named below, request a hearing to contest the application for prejudgment remedy, claim an exemption or request the posting or substitution of a bond. I claim: ("X" the appropriate boxes)

- [ ] that the amount sought in the application for prejudgment remedy is unreasonably high.
- [ ] a defense, counterclaim, set-off, or exemption.
- [ ] that any judgment that may be rendered is adequately secured by insurance.
- [ ] that I be allowed to substitute a bond for the prejudgment remedy.
- [ ] that the plaintiff be required to post a bond to secure me against any damages that may result from the prejudgment remedy.

C L P J R H G

FOR COURT USE ONLY

I certify that a copy of the above claim was mailed/delivered to the Plaintiff or the Plaintiff's attorney on the Date Mailed/Delivered shown below.

| DATE COPY(IES) MAILED/DELIVERED | SIGNED *(Defendant)* | DATE SIGNED |
|---|---|---|

| TYPE OR PRINT NAME AND ADDRESS OF DEFENDANT | DOCKET NO.<br>**PJR CV** |
|---|---|

| NAME OF EACH PARTY SERVED* | ADDRESS AT WHICH SERVICE WAS MADE* |
|---|---|

*If necessary, attach additional sheet with names of each party served and the address at which service was made.

| | | |
|---|---|---|
| RETURN DATE:  NOVEMBER 17, 2009 | : | SUPERIOR COURT |
| | : | |
| ACCESS INTERNATIONAL ADVISORS | : | JUDICIAL DISTRICT OF |
| LIMITED | : | STAMFORD/ NORWALK |
| | : | |
| v. | : | AT STAMFORD |
| | : | |
| ARGENT MANAGEMENT CO. LLC | : | OCTOBER 16, 2009 |

## APPLICATION FOR PREJUDGMENT REMEDY

To the Superior Court for the Judicial District of Stamford/Norwalk at Stamford:

The undersigned represents:

1.      Access International Advisors Limited is about to commence an action against Argent Management Co. LLC., 500 West Putnam Avenue, Greenwich, Connecticut 06830, pursuant to the attached proposed unsigned Writ, Summons, Complaint and Affidavits of Guy de la Tour du Pin Verclause and Myles J. Edwards.

2.      There is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in favor of the applicant, and that to secure the judgment, the applicant seeks an order from the Court directing that the following prejudgment remedy be granted to secure the sum of One Million Two Hundred Seventy-Nine Thousand Nine Hundred Seventy-Nine and 00/100 Dollars ($1,279,979.00):

> (a)      To attach the following:

> > (i)      defendant's bank accounts or any other accounts defendant maintains with any financial institution;

> > (ii)      any real estate in which defendant holds an interest;

00002

      (iii)    any cash in defendant's possession;

      (iv)    any personalty owned by defendant;

      (v)    defendant's accounts receivable;

      (vi)    defendant's fixtures, equipment, motor vehicles, inventory, general intangibles, and all proceeds thereof; and

      (vii)    all other assets which may be disclosed by defendant in response to plaintiff's Motion for Prejudgment Disclosure of Property and Assets, wherever located in the State of Connecticut.

      (b)    To garnishee any agent, trustee, or debtor of the defendant who has concealed in his/her/its possession property of the defendant and is indebted to defendant.

PLAINTIFF
ACCESS INTERNATIONAL
ADVISORS LIMITED

By: _____
Douglas J. Varga

ZELDES, NEEDLE & COOPER, P.C.
1000 Lafayette Boulevard
P.O. Box 1747
Bridgeport, CT  06601-1747
Telephone:  (203) 333-9441
Facsimile:  (203) 333-1489
E-mail:  dvarga@znclaw.com
Juris No. 69695

Its Attorneys

00003

Of Counsel:

Jack A. Gordon, Esq.
(pending pro hac vice admission)
Joshua B. Katz, Esq.
(pending pro hac vice admission)
KENT, BEATTY & GORDON, LLP
425 Park Avenue, The Penthouse
New York, NY 10022
Telephone:  (212) 421-4300
Facsimile:   (212) 421-4303
E-mail:  JAG@KBG-law.com
            JBK@KBG-law.com

00004

| | | |
|---|---|---|
| RETURN DATE:  NOVEMBER 17, 2009 | : | SUPERIOR COURT |
| | : | |
| ACCESS INTERNATIONAL ADVISORS LIMITED | : | JUDICIAL DISTRICT OF STAMFORD / NORWALK |
| | : | |
| v. | : | AT STAMFORD |
| | : | |
| ARGENT MANAGEMENT CO. LLC | : | OCTOBER 16, 2009 |

## ORDER GRANTING PREJUDGMENT REMEDY

WHEREAS, plaintiff Access International Advisors Limited has made application for prejudgment remedies pursuant to Conn. Gen. Stat. §§52-278a, et seq. (the "Application"); and

WHEREAS, after due hearing, in which plaintiff and defendant Argent Management Co. LLC had an opportunity to be heard, the Court hereby finds that probable cause exists that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims, or set-offs, will be rendered in the matter in favor of plaintiff and that the Application should be granted.

IT IS, THEREFORE, HEREBY ORDERED:

    1.    That plaintiff may attach the following:

        (a)    defendant's bank accounts or any other accounts defendant maintains with any financial institution;

        (b)    any real estate in which defendant holds an interest;

        (c)    any cash in defendant's possession;

        (d)    any personalty owned by defendant;

        (e)    defendant's accounts receivable;

00005

        (f)      defendant's fixtures, equipment, motor vehicles, inventory, general intangibles, and all proceeds thereof; and

        (g)      all other assets which may be disclosed by defendant in response to plaintiff's Motion for Prejudgment Disclosure of Property and Assets, wherever located in the State of Connecticut.

2.      That plaintiff may attach additional goods and estates, both real and personal, of defendant Argent Management Co. LLC, as plaintiff may determine in advance of the hearing hereon and/or as may be disclosed by defendant pursuant to the Motion for Prejudgment Disclosure of Property and Assets filed by plaintiff, to the value of One Million Two Hundred Seventy-Nine Thousand Nine Hundred Seventy-Nine and 00/100 Dollars ($1,279,979.00); and

3.      That plaintiff may garnishee in the above-referenced amount any agent, trustee, or debtor of defendant Argent Management Co. LLC, who has concealed in his/her/its hands the goods, effects, and estate of the defendant and is indebted to it, as plaintiff may determine exist in advance of the hearing hereon and/or as are disclosed by the defendant in response to an Order for Disclosure of Property and Assets.

Dated at Stamford, Connecticut this _____ day of _____, 2009.

THE COURT

By:_____
           Judge of the Superior Court

00006

2

| RETURN DATE: NOVEMBER 17, 2009 | : | SUPERIOR COURT |
| ACCESS INTERNATIONAL ADVISORS LIMITED | : | JUDICIAL DISTRICT OF STAMFORD / NORWALK |
| v. | : | AT STAMFORD |
| ARGENT MANAGEMENT CO. LLC | : | OCTOBER 16, 2009 |

## ORDER FOR HEARING AND NOTICE

The foregoing Application for Prejudgment Remedy (the "Application") having been presented to the Court, it is hereby ordered that a hearing shall be held at the Superior Court for the Judicial District of Stamford/Norwalk at Stamford, 123 Hoyt Street, Stamford, Connecticut, on __11|23__, 2009 at T·3⌒ a.m., and that, in accordance with §52-278c of the Connecticut General Statutes, plaintiff Access International Advisors Limited shall give notice to defendant Argent Management Co. LLC, of the pendency of the Application and of the time and place in which it will be heard, by causing a true and attested copy of the Application, the proposed unsigned Writ, Summons, and Complaint, Affidavits of Guy de al Tour de Pin Verclause and Myles J. Edwards, proposed Order Granting Prejudgment Remedy, Motion for Prejudgment Disclosure of Property and Assets, proposed Order for Prejudgment Disclosure of Property and Assets, and of this Order, together with such notice as is required under §52-278c(e) of the Connecticut General Statutes, to be served upon defendant Argent Management Co. LLC, or its attorneys, by some proper officer or indifferent person on or before __11|11__, 2009, and that due return of service be made to this Court.

00007

Dated at Stamford, Connecticut this _____ day of _____, 2009.

_____
Clerk of the Court

00008

2

RETURN DATE: NOVEMBER 17, 2009          :     SUPERIOR COURT
                                        :
ACCESS INTERNATIONAL ADVISORS           :     JUDICIAL DISTRICT OF
LIMITED                                 :     STAMFORD / NORWALK
                                        :
         v.                             :     AT STAMFORD
                                        :
ARGENT MANAGEMENT CO. LLC               :     OCTOBER 16, 2009

## SUMMONS

To Any Proper Officer:

GREETING:

By authority of the State of Connecticut, you are hereby commanded to serve a true and attested copy of the above Application for Prejudgment Remedy, proposed unsigned writ, summons, and complaint, Affidavits of Guy de la Tour du Pin Verclause and Myles J. Edwards, Order for Hearing and Notice, proposed Order Granting Prejudgment Remedy, Motion for Prejudgment Disclosure of Property and Assets and proposed Order regarding the same, and the Notice required under Conn. Gen. Stat. §52-278c(e), upon Argent Management Co. LLC, 500 West Putnam Avenue, Greenwich, Connecticut, by serving the same upon the defendant in the manner provided by statute on or before October __, 2009.

You are further commanded, in accordance with the accompanying Order for Hearing and Notice, to summon the defendant to a hearing to determine whether (a) there is probable cause sufficient for the issuance of a prejudgment remedy in the amount of One Million Two Hundred Seventy-Nine Thousand Nine Hundred Seventy-Nine and 00/100 Dollars ($1,279,979.00), and (b) whether the plaintiff is entitled to the relief requested in the Motion for Prejudgment Disclosure of Property and Assets, to be held at the time and date

specified in the Order for Hearing and Notice at the Superior Court for the Judicial District

of Stamford/Norwalk at Stamford, 123 Hoyt Street, Stamford Connecticut.

Hereof fail not but due service and return make.

Dated at Stamford, Connecticut this _____ day of _____, 2009.

00010

2

RETURN DATE:  NOVEMBER 17, 2009    :    SUPERIOR COURT

                                          :

ACCESS INTERNATIONAL ADVISORS    :    JUDICIAL DISTRICT OF
LIMITED                                :    STAMFORD / NORWALK

                                          :

        v.                                :    AT STAMFORD

                                          :

ARGENT MANAGEMENT CO. LLC        :    OCTOBER 16, 2009

## COMPLAINT

Plaintiff Access International Advisors Limited ("AIA"), for its Complaint against defendant Argent Management Co. LLC ("Argent"), states as follows:

## NATURE OF THE ACTION

1.      This is a breach of contract action necessitated by the inexplicable — and indeed, inexcusable — refusal of defendant Argent to pay plaintiff AIA certain finder's fees due to it pursuant to a written contract between the parties.  In the months preceding this lawsuit, Argent repeatedly admitted that it owes AIA approximately $1.2 million in contractual finder's fees, and has owed that money since December of last year.  Argent has also repeatedly acknowledged that it has no justification for not paying the money, and in fact has repeatedly misrepresented to AIA that the money would be wired "imminently."  Having finally tired of Argent's empty promises to remit payment, AIA brings this action to recover the monies rightfully due to it pursuant to the parties' written contract.

00011

## THE PARTIES

2.     Plaintiff AIA is a corporation formed under the laws of the Bahamas with its principal place of business in the Bahamas.

3.     Upon information and belief, defendant Argent is a limited liability company formed under the laws of Delaware with its principal place of business at 500 West Putnam Avenue, Greenwich, Connecticut 06830.

## FACTUAL BACKGROUND

4.     Argent is an SEC-registered investment adviser.  As such, it manages various hedge funds, and collects fees based on the performance of its funds and the total amount of money it has under management.

5.     AIA is in the business of raising capital from international accredited investors.  It has a long-standing relationship with Argent dating back to at least 1997, and since that time has successfully helped Argent raise many millions of dollars in capital for its funds, including the Argent Classic Convertible Arbitrage Fund Ltd. and the Argent LowLev Convertible Arbitrage Fund Ltd. (referred to together as the "Fund").

6.     On August 16, 2001, Argent and AIA entered into a written contract — entitled a "Sourcing Agreement" — to formalize the terms on which AIA would continue to be compensated for "raising capital for, and directing clients to, [Argent] for the purpose of investing in the Fund," which the contract refers to as "Sourcing Services." (A copy of the Sourcing Agreement is annexed hereto as Exhibit 1.)

00012

2

7.      The Sourcing Agreement provides that it "shall continue in effect until terminated." To date, it has not been terminated, and therefore the parties remain bound by all of its terms.  (Ex. 1, § 7(a).)

8.      In exchange for providing Sourcing Services, the Sourcing Agreement obligates Argent to pay AIA certain finder's fees calculated by the formula set forth in the following clause:

> In consideration for AIA providing the Sourcing Services resulting in investments in the Fund during the term of this Agreement ("Directed Investments"), [Argent] shall pay AIA 15% of (i) the asset-based management fees received by [Argent] from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees, and (ii) the performance-based fees received by [Argent] from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees ((i) and (ii) collectively, the "Manager Fees" and AIA's 15% thereof, the "AIA Fees").

(Ex. 1, § 1.)

9.      The Sourcing Agreement further provides that Argent "shall pay the AIA Fees to AIA once a year in December for the 12 months ended the prior November 30th."  (Ex. 1, § 1.)   Thus, the AIA Fees are calculated based on a December-to-November fiscal year, and become due and payable approximately one year after each fiscal year-end.  (For example, the AIA Fees earned during the period from December 1, 2002 through November 30, 2003 were due and payable in December 2004.)

00013

3

10.    Each December since the Sourcing Agreement has been in effect, Argent and AIA have jointly reviewed Argent's books and records in order to calculate the AIA Fees due AIA.  Argent paid the fees due AIA for the fiscal years ending during 2002 through 2006.

11.    Consistent with their usual practice, on December 10, 2008, Simon Bowen, an accountant with AIA, emailed Argent's Chief Accounting Officer, Tim Bowman, requesting a fee schedule for the fiscal year ending November 30, 2007.  Bowman replied within hours, emailing a spreadsheet to Bowen and writing, "Please find attached the calculations of what Argent owes [AIA] for 2007.  Please review and let me know if you are OK with amount and we will process payment."  (A copy of the relevant email string and its attachment is annexed hereto as Exhibit 2.)

12.    According to Argent's own spreadsheet, it owes AIA USD $1,190,678 in AIA Fees for 2007, calculated in accordance with the 15% formula set forth in Section 1 of the Sourcing Agreement.

13.    During the first and early second quarters of 2009, principals of AIA, including Guy de La Tour du Pin Verclause, inquired of Argent as to the status of the payment several times during the first and early second quarters of 2009, but no payment was made.  In June 2009, AIA contacted Argent again to follow-up on the delinquent payment.  During numerous ensuing telephone conversations between the parties, Argent's general counsel, Andrew Stone, Esq., repeatedly admitted that the AIA Fees for 2007 were past due and owing, and promised that the money would be wired

00014

4

shortly.  For instance, on June 23, 2009, AIA's general counsel, Myles J. Edwards, Esq., had a telephone conversation with Stone in which Stone apologized for the delay, stating Argent is "not disputing the debt," and representing that the money would be wired "by the end of the week."

14.    The "end of the week" came and went without payment, and on July 2, 2009 AIA's outside counsel sent a formal demand letter to Argent.  Argent did not write back, but in an ensuing telephone conversation on July 13, 2009, Stone told AIA's general counsel that there was "no contest on the fact that the fees are due and owing," and then asked AIA to provide Argent with a letter stating that AIA was not subject to any pending or threatened claims.  Stone promised that upon receipt of such a letter, the AIA Fees would be wired in "days or less."  AIA acceded to Stone's request by sending the letter that same day, but Argent still did not remit payment.  After that, Stone stopped returning AIA's calls.

15.    Accordingly, AIA is now forced to bring this action to recover the monies that Argent admits it owes AIA but refuses to pay.

00015

## CLAIMS FOR RELIEF

**Count One - Breach of Contract as to 2007 AIA Fees**

1-15.   AIA repeats and realleges Paragraphs 1 through 15 as and for Paragraphs 1 through 15 of Count One as if fully set forth herein.

16.     The AIA Fees for 2007 equal $1,190,678.00.

17.     Despite repeated oral and written demands, Argent has failed and refused, and continues to fail and refuse, to pay the AIA Fees for 2007 earned and payable under the terms of the Sourcing Agreement.

19.     AIA has performed all conditions required of it under the terms of the Sourcing Agreement regarding its entitlement to the AIA Fees for 2007.

20.     Argent's failure and refusal to pay the AIA Fees for 2007 is without justification and has caused AIA to incur substantial monetary loss.

**Count Two - Declaratory Judgment as to Future AIA Fees**

1-20.   AIA repeats and realleges Paragraphs 1 through 20 of Count One as and for Paragraphs 1 through 20 of Count Two as if fully set forth herein.

21.     In December 2009, the AIA Fees for the 2008 fiscal year will become due and owing.  Upon information and belief, the 2008 AIA Fees will be in excess of $100,000.00.

22.     Further, from November 30, 2008 to date, additional AIA Fees have accrued which will become due and payable in December 2010.  Upon information and belief, the 2009 AIA Fees will be in excess of $30,000.00

00016

6

23.     Upon information and belief, Argent will continue to be in breach of the Sourcing Agreement and will repudiate its obligations under that contract by refusing to remit payment of the 2008 and 2009 AIA fees, just as it has refused to pay the 2007 AIA Fees, all in breach of the Sourcing Agreement.

24.     Pursuant to § 9(j) of the Sourcing Agreement, Argent's obligation to pay the AIA Fees survives termination of the contract.

25.     An actual controversy exists between AIA and Argent with respect to Argent's liability for payment of the 2008 and 2009 AIA Fees.

26.     AIA has no adequate remedy at law.

27.     A judicial declaration is necessary to establish the respective rights and obligations of AIA and Argent with respect to AIA's claim to 2008 and 2009 AIA Fees.

00017

7

WHEREFORE, plaintiff Access International Advisors Limited demands

judgment against defendant Argent Management Co. LLC, as follows:

1. Compensatory damages in an amount to be determined at trial, but in no event less than $1,190,678.00 (Count One);

2. Prejudgment interest pursuant to New York CPLR 5001 and 5004 (Count One);

3. A declaration that defendant Argent Management Co. LLC has materially breached the Sourcing Agreement with respect to the 2008 AIA Fees that are already accrued and earned and which will become due and owing in December 2009, in the amount of at least $100,000.00 (Count Two);

4. A declaration that defendant Argent Management Co. LLC has materially breached the Sourcing Agreement with respect to the 2009 AIA Fees that are already accrued and earned and which will become due and owing in December 2010, in the amount of at least $30,000.00 (Count Two);

5. Costs and expenses, including all reasonable attorneys' fees, incurred in collecting the debt at issue in this action; and

6. Such other and further relief as this Court deems just and proper.

PLAINTIFF
ACCESS INTERNATIONAL
ADVISORS LIMITED

By: _____
      Douglas J. Varga

      ZELDES, NEEDLE & COOPER, P.C.
      1000 Lafayette Boulevard
      P.O. Box 1747
      Bridgeport, CT  06601-1747
      Telephone:  (203) 333-9441
      Facsimile:  (203) 333-1489
      E-mail:  dvarga@znclaw.com
      Juris No. 69695

Its Attorneys

00018

8

.

Of Counsel:

Jack A. Gordon, Esq.
(pending pro hac vice admission)
Joshua B. Katz, Esq.
(pending pro hac vice admission)
KENT. BEATTY & GORDON, LLP
425 Park Avenue, The Penthouse
New York, NY 10022
Telephone: (212) 421-4300
Facsimile:  (212) 421-4303
E-mail: JAG@KBG-law.com
        JBK@KBG-law.com

00019

| | | |
|---|---|---|
| RETURN DATE:  NOVEMBER 17, 2009 | : | SUPERIOR COURT |
| | : | |
| ACCESS INTERNATIONAL ADVISORS | : | JUDICIAL DISTRICT OF |
| LIMITED | : | STAMFORD / NORWALK |
| | : | |
| v. | : | AT STAMFORD |
| | : | |
| ARGENT MANAGEMENT CO. LLC | : | OCTOBER 16, 2009 |

## **STATEMENT OF AMOUNT IN DEMAND**

In addition to declaratory relief, Plaintiff's amount in demand, exclusive of interest and costs, exceeds $15,000.00.

> PLAINTIFF
> ACCESS INTERNATIONAL
> ADVISORS LIMITED
>
>
> By: _____
>     Douglas J. Varga
>
>     ZELDES, NEEDLE & COOPER, P.C.
>     1000 Lafayette Boulevard
>     P.O. Box 1747
>     Bridgeport, CT  06601-1747
>     Telephone:  (203) 333-9441
>     Facsimile:   (203) 333-1489
>     E-mail:  dvarga@znclaw.com
>     Juris No. 69695
>
>
> Its Attorneys

00020

10

| RETURN DATE: NOVEMBER 17, 2009 | : | SUPERIOR COURT |
|---|---|---|
| | : | |
| ACCESS INTERNATIONAL ADVISORS | : | JUDICIAL DISTRICT OF |
| LIMITED | : | STAMFORD / NORWALK |
| | : | |
| v. | : | AT STAMFORD |
| | : | |
| ARGENT MANAGEMENT CO. LLC | : | OCTOBER 16, 2009 |

## CERTIFICATION PURSUANT TO PRACTICE BOOK § 17-56(b)

Plaintiff Access International Advisors Limited hereby certifies that all interested

persons have been joined as parties to its Complaint.

PLAINTIFF
ACCESS INTERNATIONAL
ADVISORS LIMITED


By: _____
        Douglas J. Varga

        ZELDES, NEEDLE & COOPER, P.C.
        1000 Lafayette Boulevard
        P.O. Box 1747
        Bridgeport, CT 06601-1747
        Telephone: (203) 333-9441
        Facsimile: (203) 333-1489
        E-mail: dvarga@znclaw.com
        Juris No. 69695

    Its Attorneys

00021

11

*1*

Ex 1

00022

## SOURCING AGREEMENT

AGREEMENT, made as of the 16th day of August, 2001, by and between ACCESS INTERNATIONAL ADVISORS LIMITED, a corporation organized under the laws of the Bahamas ("AIA"); and ARGENT MANAGEMENT CO. LLC (the "Investment Manager").

### WITNESSETH

WHEREAS, AIA is engaged in the business, among others, of raising capital for investment managers, investment advisors and investment funds; and

WHEREAS, the Investment Manager serves as an investment manager and/or consultant of Argent Classic Convertible Arbitrage Fund (Bermuda) Ltd. and Argent LowLev Convertible Arbitrage Fund Ltd. (collectively the "Fund") and may manage the investments of clients directly in individual accounts and/or indirectly as the manager of other private investment funds and pooled investment vehicles (each, an "Account"); and

WHEREAS, the Investment Manager desires that AIA provide assistance, outside of the United States, to the Investment Manager in raising capital for, and directing clients to, the Investment Manager for the purpose of investing in the Fund (collectively, the "Sourcing Services"); and AIA is willing from time-to-time to provide the Sourcing Services to the Investment Manager.

NOW, THEREFORE, for and in consideration for the premises and the mutual covenants hereinafter contained, the parties hereto agree as follows:

1. AIA Fees. In consideration for AIA providing the Sourcing Services resulting in investments in the Fund during the term of this Agreement ("Directed Investments"), the Investment Manager shall pay AIA 15% of (i) the asset-based management fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees, and (ii) the performance-based fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees ((i) and (ii) collectively, the "Manager Fees" and AIA's 15% thereof, the "AIA Fees"). AIA will be entitled to receive from the Investment Manager AIA Fees with respect to Directed Investments in Type C interests only if both parties hereto so agree by separate written agreement.

The Investment Manager shall pay the AIA Fees to AIA once a year in December for the 12 months ended the prior November 30th.

In the event AIA introduces to the Fund or the Investment Manager an investor who becomes a client of the Investment Manager by investing assets in an Account, AIA shall be entitled to 15% of all asset based or performance-based fees received by the Investment Manager from the Fund on such invested assets, unless such invested assets are or become subject to another written agreement between AIA and the Investment Manager.

2. Agents. AIA, at its own expense, may employ agents and representatives to assist it in performing the Sourcing Services.

00023

3.   Representation, Warranties and Covenants. Each of the parties represents, warrants and covenants to the other party as follows:

(a)   It is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and in each other jurisdiction in which the nature or conduct of its business requires such qualification.

(b)   It has full authority under applicable law to perform its obligations under this Agreement.

(c)   This Agreement has been duly and validly authorized, executed and delivered on its behalf and constitutes a legal, valid and binding agreement enforceable against such party in accordance with its terms.

(d)   It has all governmental, regulatory and exchange approvals and licenses, and has effected all filings and registrations with governmental agencies required to conduct its business and to act as described herein, and the performance of such obligations will not contravene or result in a breach of any provision of its certificate of incorporation, by-laws or any agreement, instrument, order, law or regulation binding upon it.

(e)   The foregoing and following representations and warranties shall be continuing during the term of this Agreement, and if at any time any event shall occur which could make any of the foregoing or following incomplete or inaccurate, it shall promptly notify the other party of the occurrence of such event.

4.   Additional Representations, Warranties and Covenants of Investment Manager. The Investment Manager represents, warrants and covenants to AIA as follows:

(a)   It is not, and for so long as this Agreement is in effect, shall not be nor required to be registered as an investment adviser under the Investment Advisers Act of 1940, as amended.

(b)   There is, and at all times during the term hereof, there will be, no differential in the fees charged by the Investment Manager for a client introduced to the Investment Manager or the Fund by AIA and an investor who independently invests in the Fund (without the aid of a solicitor).

(c)   It shall, at its own expense, provide to AIA, and in sufficient copies as AIA may reasonably request, the following: (i) a current private placement memorandum with respect to the Fund (the "Memorandum") and (ii) any current sales literature prepared by or on behalf of the Fund ("Sales Literature"). The Investment Manager represents, warrants and covenants that the Memorandum and each item of Sales Literature does not, and will not at any time, contain any untrue statement of material fact or omit to state a material fact necessary to make statements contained therein, in light of the circumstances under which such statements were made, not misleading.

2

00024

5.   <u>Additional Representations, Warranties and Covenants of AIA</u>.  AIA represents, warrants and covenants to the Investment Manager as follows:

(a)   AIA shall furnish Soliciting Services hereunder only pursuant to the terms and conditions set forth herein and pursuant to written instructions that may be provided to it from time to time by the Investment Manager or by a person that AIA reasonably believes is authorized to act on behalf of the Investment Manager.  AIA will not make any solicitation in the United States.

(b)   AIA shall perform its duties in a manner consistent with any applicable laws and regulations to which it may be subject.  Further, AIA shall perform its duties only in those jurisdictions in which it may lawfully perform its duties (e.g., AIA shall, prior to performing its duties in any jurisdiction, obtain any licenses or other qualifications required by such jurisdiction).

6.   <u>AIA and Investment Manager Independent</u>.  AIA and Investment Manager each shall be deemed to be an independent contractor with respect to the other and, unless otherwise expressly provided herein or with the prior written authorization of the other, neither party shall have authority to act for or represent the other, its affiliates, officers, directors or employees in any way and shall not otherwise be deemed to be an agent of the other.  Nothing contained herein shall create or constitute AIA or the Investment Manager as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, nor shall be deemed to confer on either of them any express, implied, or apparent authority to incur any obligation or liability on behalf of any other.

7.   <u>Term and Termination</u>.

(a)   This Agreement shall continue in effect until terminated.

(b)   Either party may terminate this Agreement by giving at least 90 days prior written notice to the other party of its intention to terminate this Agreement effective as of such date.  No such termination shall relieve the Investment Manager from its obligations under Section 1.

(c)   Either AIA or Investment Manager may terminate this Agreement by giving 30 days prior written notice if there has been a material breach of an agreement hereof by the other party, which breach is not cured within such 30-day period.

(d)   No termination of this Agreement under subsection (b) or (c) of this Section 7 shall relieve the Investment Manager from its obligations under Section 1.

8.   <u>Indemnification</u>.

(a)   AIA shall indemnify, hold harmless, and defend the Investment Manager, the Fund and their respective principals and affiliates from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by AIA; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or

3

00025

on behalf of, AIA; provided, however that the duty to indemnify shall not apply to information regarding the Investment Manager, the Fund or their respective principals and affiliates that was approved in advance by Investment Manager or was based upon information provided in writing to AIA by the Investment Manager.

(b)     The Investment Manager and the Fund, jointly and severally, shall indemnify, hold harmless, and defend AIA, its principals and its affiliates, from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by Investment Manager; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or on behalf of, Investment Manager; provided, however, that the duty to indemnify shall not apply to information regarding AIA or its principals and affiliates that was approved in advance by AIA or was based upon information provided in writing to the Investment Manager by AIA.

9. Miscellaneous.

(a)     Confidential Matters. AIA and Investment Manager each shall use its best effort to safeguard the secrecy and confidentiality of all confidential and proprietary information of the other party (including the names and other identifying information of persons solicited by AIA) and shall not disclose any of the foregoing to any third party except:

(i)     information which at the time of disclosure is part of the public knowledge or literature that is readily accessible to such third party; provided that any combination of features shall not be deemed within this exception merely because individual features are part of the public knowledge or literature that is readily accessible to such third party, but only if the combination itself and its principle of operations are part of the public knowledge or literature that is readily accessible to such third party;

(ii)     information required by law to be disclosed; or

(iii)     as otherwise may be consented to by such other party or permitted by the terms of this Agreement.

(b)     Assignment. This Agreement shall not be assigned by either party without the prior express written consent of the other party.

(c)     Amendment; Waiver. This Agreement shall not be amended except by a writing signed by the parties hereto. No waiver of any provision of this Agreement shall be implied from any course of dealing between the parties hereto or from any failure by either party hereto to assert its rights hereunder on any occasion or series of occasions.

(d)     Severability. If any provision of this Agreement, or the application of any provision to any person or circumstance, shall be held to be inconsistent with any present or future law, ruling, rule, or regulation of any court or governmental or regulatory authority having jurisdiction over the subject matter hereof, such provision shall be deemed to be rescinded or modified in accordance with such law, ruling, rule, or regulation, and the remainder of this

4

00026

Agreement, or the application of such provision to persons or circumstances other than those as to which it shall be held inconsistent, shall not be affected thereby.

(e)   <u>Notices</u>.  Any notice required or desired to be delivered under this Agreement shall be in writing and shall be delivered to each of the parties at its address set forth on the signature page hereof or at such other address as a party designates in writing.

(f)   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the law of the State of New York, U.S.A., excluding the choice of law and conflicts of law provisions thereof.

(g)   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(h)   <u>Headings</u>.  Headings to sections and subsections in this Agreement are for the convenience of the parties only and are not intended to be a part of or to affect the meaning or interpretation hereof.

(i)   <u>No Third Party Beneficiaries</u>.  This Agreement is not intended to and shall not convey any rights to persons who are not a party to this Agreement.

(j)   <u>Survival</u>.  Sections 1, 7(d), 8 and 9 shall survive the termination of this Agreement.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

5

00027

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS                  ARGENT MANAGEMENT CO. LLC
LIMITED


By: _____              By: _____
          John O'Donnell, Director                          John R. Gordon, Vice President

Address:                                                        Address:
Suite 60, Grosvenor Close                               500 West Putnam Avenue – Third Floor
Shirley Street                                                  Greenwich, Connecticut 06830
Nassau
P.O. Box N-75121

6

00028

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS
LIMITED

ARGENT MANAGEMENT CO. LLC

By: _____
     John O'Donnell, Director

By: _____
     John R. Gordon, Vice President

Address:
Suite 60, Grosvenor Close
Shirley Street
Nassau
P.O. Box N-75121

Address:
500 West Putnam Avenue – Third Floor
Greenwich, Connecticut 06830

00029

Ex 2

00030

-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 11 December 2008 00:19
To: 'Simon Bowen'
Cc: Leo Cheung
Subject: RE: Access Fees

Hi Simon,

I hope things are better across the pond! Please find attached the calculations of what Argent owes Access for 2007. Please review and let me know if you are OK with amount and we will process payment. Also, please note that I used 15% payout for 2007 for Argent and 20% payout for Veritas. I believe that the agreement was changed to 20% starting in January 2008 and going forward.

Thanks,
Tim

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 9:15 AM
To: Timothy Bowman
Subject: RE: Access Fees

Thanks Tim

-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 10 December 2008 14:10
To: 'Simon Bowen'
Subject: RE: Access Fees

I am working on it now!

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 8:54 AM
To: Timothy Bowman
Subject: Access Fees

Hi Tim

Really really need the fee schedule.

00031

Thanks & regards

Simon Bowen
AIA Europe Ltd
5/11 Lavington Street
London
SE1 0NZ

Tel : + 44 (0)20 7945 6156
Fax : + 44 (0)20 7945 6159

00032

Ex 3

00033

0034

*[This page consists of a large, rotated, highly dense financial spreadsheet titled "Sum of Total Paper — Arrears Forward 2007", with columns "Fund Long Name", "Client Name", and monthly columns (MONTH) for 2006/12 through 2007/10 and a "Grand Total". The numeric data in the grid is too small and low-resolution to transcribe reliably.]*

Partial readable row labels / client names include:

- Argos Classic Convertible Arbitrage Fund (Bermuda) Ltd.
- Argos Classic Convertible Arbitrage Fund (Bermuda) Ltd. Total
- Argos Classic Convertible Arbitrage Fund LP
- Argos Classic Convertible Arbitrage Fund LP Total
- Argos Classic Convertible Arbitrage Fund Ltd.
- Argos Classic Convertible Arbitrage Fund Ltd. Total
- Argos Low/ex Convertible Arbitrage Fund LLC
- Argos Low/ex Convertible Arbitrage Fund LLC Total
- Argos Low/ex Convertible Arbitrage Fund Ltd.
- Argos Low/ex Convertible Arbitrage Fund Ltd. Total
- Argos Low/ex Convertible Arbitrage Fund Ltd.
- Argos Low/ex Convertible Arbitrage Fund Ltd. Total
- Aspen Multi-Strategy Fund Ltd. Total
- Cerberus (Lux) Long/Short Fund Ltd. Total
- The Globe Trust Co. Ltd as Trustee for The Haven T
- Elio Class C
- Partners Group
- Vertex Short/Mid Focus Fund Ltd
- Vertex Short/Mid Focus Fund Ltd. Total
- Grand Total

Column headers (MONTH): 2006/12, 2007/01, 2007/02, 2007/03, 2007/04, 2007/05, 2007/06, 2007/07, 2007/08, 2007/09, 2007/10, Grand Total



00035

00036



00037



RETURN DATE: NOVEMBER 10, 2009    :   SUPERIOR COURT

                                      :

ACCESS INTERNATIONAL ADVISORS   :   JUDICIAL DISTRICT OF
LIMITED                                :   STAMFORD / NORWALK

                                        :

        v.                         :   AT STAMFORD

                                        :

ARGENT MANAGEMENT CO. LLC       :


COUNTRY OF FRANCE  )
                    )   **ss.**
CITY OF PARIS        )

     **GUY DE LA TOUR DU PIN VERCLAUSE**, being duly sworn, deposes and says:

     1.     I am a Director of plaintiff Access International Advisors Limited ("AIA"). I make

this affidavit in support of AIA's application for a prejudgment remedy against defendant Argent

Management Co. LLC ("Argent") in the amount of $1,190,678.00, plus interest at 9% since

December 15, 2008, or $89,301.00, for a total of $1,279,979.00. Except where otherwise stated, I

have personal knowledge of the facts set forth herein, and could testify to them at any prejudgment

remedy hearing in this lawsuit. All attached exhibits are true and correct copies of the originals.

     2.     AIA is in the business of raising capital from accredited international investors.

Argent manages hedge funds. AIA has a long-standing relationship with Argent going back to the

1990s, during which time AIA has raised many millions of dollars in capital for Argent-managed

funds.

     3.     In 2001, AIA and Argent formalized the terms on which AIA would raise capital for

Argent's funds by entering into a written "Sourcing Agreement" as of August 16, 2001. A copy of

the Sourcing Agreement is annexed hereto as Exhibit 1.

00039

4.      Section 1 of the Sourcing Agreement specifies the formula by which Argent agreed to compensate AIA for raising capital, which the contract refers to as "Sourcing Services." It provides:

> In consideration for AIA providing the Sourcing Services resulting in investments in the Fund during the term of this Agreement ("Directed Investments"), [Argent] shall pay AIA 15% of (i) the asset-based management fees received by [Argent] from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees, and (ii) the performance-based fees received by [Argent] from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees ((i) and (ii) collectively, the "Manager Fees" and AIA's 15% thereof, the "AIA Fees").

(Ex. 1, § 1.)

5.      The Sourcing Agreement further provides that Argent "shall pay the AIA Fees to AIA once a year in December for the 12 months ended the prior November 30th." (*Id.*) Thus, the AIA Fees are calculated based on a December-to-November fiscal year, and become due approximately one year after each fiscal-year-end. (For example, the AIA Fees earned during the period from November 30, 2002 through November 30, 2003 were due and payable in December 2004.)

6.      Because of this provision, AIA and Argent developed a practice of conferring each December to calculate the precise AIA Fees due for the preceding fiscal year. I am informed and believe that in December 2008, Simon Bowen, who was then an accountant at AIA, conferred with Tim Bowman, Argent's Chief Accounting Officer, to calculate the 2007 AIA Fees. (A copy of an EDGAR filing in which Argent describes Mr. Bowman as Argent's Chief Accounting Officer is annexed hereto as Exhibit 2.)

7.      Annexed as Exhibit 3 is an email string between Mr. Bowen and Mr. Bowman that was stored on and retrieved from AIA's computer servers. The earliest email in the string is an email from Mr. Bowen to Mr. Bowman on the morning of December 10, 2008. The subject line of

2

00040

the email is "Access fees" and the body of the email states: "Hi Tim, Really need the fee schedule.

Thanks & regards."

8.    The last email in the string states it was sent a few minutes after midnight on

December 11, 2008, and is from Mr. Bowman to Mr. Bowen. It, too, bears the "Access fees" subject

line and the body of the email states:

> Hi Simon,
> I hope things are better across the pond! ***Please find attached the calculations of***
> ***what Argent owes Access for 2007.*** Please review and let me know if you are OK
> with the amount and we will process payment. Also, please note that I used 15%
> payout for 2007 for Argent and 20% payout for Veritas. I believe that the agreement
> was changed to 20% starting in January 2008 and going forward.
> Thanks,
> Tim

(emphasis added.)

9.    The attachment to Mr. Bowman's email is annexed hereto as Exhibit 4. It is a

spreadsheet entitled "Access Payment 2007." This spreadsheet contains a detailed break-down of

Argent's computation of the 2007 AIA Fees under the Sourcing Agreement. According to Argent's

calculations, it owes AIA $1,190,678.00 in 2007 fees.

10    Mr. Bowman's calculation comports with my own recollection of the Sourcing

Services provided by AIA in 2007. Although I do not recall precise figures, I know that clients

introduced to Argent by AIA kept a significant amount of their capital with Argent during 2007,

consistent with about $1.2 million in fees.

11.    Unfortunately, tragedy struck AIA shortly after Mr. Bowman transmitted his

calculation to Mr. Bowen. On December 12, 2008, Bernard Madoff was arrested. Although AIA

00041

3

had absolutely no involvement with or connection to Bernard Madoff, certain persons and entities affiliated with AIA were investors and lost billions of dollars. Sadly, one of those persons was a principal of AIA, Thierry Magon de la Villehuchet, who, as a result, committed suicide on December 23, 2008. Consequently, AIA was not in a position to immediately respond to Mr. Bowman's email in December 2008.

12.     In the first quarter of 2009, however, AIA began to contact Argent again to request payment. Although I and others acting on behalf of AIA requested on several occasions that Argent wire the $1,190,678.00, Argent never wired the funds. To date, none of the $1,190,678.00 in 2007 AIA Fees has been paid by Argent, despite repeated demand by I and others on behalf of AIA.

WHEREFORE, I respectfully request that the Court grant AIA a prejudgment remedy against Argent in the amount of $1,279,979.00.

Guy de La Tour du Pin Verclause

Sworn to before me this
/2_th day of October, 2009

Notary Public

VU UNIQUEMENT POUR LA
CERTIFICATION DE LA SIGNATURE DE
M. Guy de la Tour du Pin Verclause
APPOSÉE CI-CONTRE PAR M.
GEORGES DINTRAS NOTAIRE A PARIS



00042

4

1

$$\sum x$$

00043

## SOURCING AGREEMENT

AGREEMENT, made as of the 16th day of August, 2001, by and between ACCESS INTERNATIONAL ADVISORS LIMITED, a corporation organized under the laws of the Bahamas ("AIA"); and ARGENT MANAGEMENT CO. LLC (the "Investment Manager").

## WITNESSETH

WHEREAS, AIA is engaged in the business, among others, of raising capital for investment managers, investment advisors and investment funds; and

WHEREAS, the Investment Manager serves as an investment manager and/or consultant of Argent Classic Convertible Arbitrage Fund (Bermuda) Ltd. and Argent LowLev Convertible Arbitrage Fund Ltd. (collectively the "Fund") and may manage the investments of clients directly in individual accounts and/or indirectly as the manager of other private investment funds and pooled investment vehicles (each, an "Account"); and

WHEREAS, the Investment Manager desires that AIA provide assistance, outside of the United States, to the Investment Manager in raising capital for, and directing clients to, the Investment Manager for the purpose of investing in the Fund (collectively, the "Sourcing Services"); and AIA is willing from time-to-time to provide the Sourcing Services to the Investment Manager.

NOW, THEREFORE, for and in consideration for the premises and the mutual covenants hereinafter contained, the parties hereto agree as follows:

1.  AIA Fees.  In consideration for AIA providing the Sourcing Services resulting in investments in the Fund during the term of this Agreement ("Directed Investments"), the Investment Manager shall pay AIA 15% of (i) the asset-based management fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees, and (ii) the performance-based fees received by the Investment Manager from the Fund on Directed Investments in Type A or Type B interests and all payments in addition to or in lieu of such fees ((i) and (ii) collectively, the "Manager Fees" and AIA's 15% thereof, the "AIA Fees").  AIA will be entitled to receive from the Investment Manager AIA Fees with respect to Directed Investments in Type C interests only if both parties hereto so agree by separate written agreement.

The Investment Manager shall pay the AIA Fees to AIA once a year in December for the 12 months ended the prior November 30th.

In the event AIA introduces to the Fund or the Investment Manager an investor who becomes a client of the Investment Manager by investing assets in an Account, AIA shall be entitled to 15% of all asset based or performance-based fees received by the Investment Manager from the Fund on such invested assets, unless such invested assets are or become subject to another written agreement between AIA and the Investment Manager.

2.  Agents.  AIA, at its own expense, may employ agents and representatives to assist it in performing the Sourcing Services.

00044

3.   Representation. Warranties and Covenants. Each of the parties represents, warrants and covenants to the other party as follows:

(a)     It is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and in each other jurisdiction in which the nature or conduct of its business requires such qualification.

(b)     It has full authority under applicable law to perform its obligations under this Agreement.

(c)     This Agreement has been duly and validly authorized, executed and delivered on its behalf and constitutes a legal, valid and binding agreement enforceable against such party in accordance with its terms.

(d)     It has all governmental, regulatory and exchange approvals and licenses, and has effected all filings and registrations with governmental agencies required to conduct its business and to act as described herein, and the performance of such obligations will not contravene or result in a breach of any provision of its certificate of incorporation, by-laws or any agreement, instrument, order, law or regulation binding upon it.

(e)     The foregoing and following representations and warranties shall be continuing during the term of this Agreement, and if at any time any event shall occur which could make any of the foregoing or following incomplete or inaccurate, it shall promptly notify the other party of the occurrence of such event.

4.   Additional Representations. Warranties and Covenants of Investment Manager. The Investment Manager represents, warrants and covenants to AIA as follows:

(a)     It is not, and for so long as this Agreement is in effect, shall not be nor required to be registered as an investment adviser under the Investment Advisers Act of 1940, as amended.

(b)     There is, and at all times during the term hereof, there will be, no differential in the fees charged by the Investment Manager for a client introduced to the Investment Manager or the Fund by AIA and an investor who independently invests in the Fund (without the aid of a solicitor).

(c)     It shall, at its own expense, provide to AIA, and in sufficient copies as AIA may reasonably request, the following: (i) a current private placement memorandum with respect to the Fund (the "Memorandum") and (ii) any current sales literature prepared by or on behalf of the Fund ("Sales Literature"). The Investment Manager represents, warrants and covenants that the Memorandum and each item of Sales Literature does not, and will not at any time, contain any untrue statement of material fact or omit to state a material fact necessary to make statements contained therein, in light of the circumstances under which such statements were made, not misleading.

2

00045

5. <u>Additional Representations, Warranties and Covenants of AIA</u>. AIA represents, warrants and covenants to the Investment Manager as follows:

(a) AIA shall furnish Soliciting Services hereunder only pursuant to the terms and conditions set forth herein and pursuant to written instructions that may be provided to it from time to time by the Investment Manager or by a person that AIA reasonably believes is authorized to act on behalf of the Investment Manager. AIA will not make any solicitation in the United States.

(b) AIA shall perform its duties in a manner consistent with any applicable laws and regulations to which it may be subject. Further, AIA shall perform its duties only in those jurisdictions in which it may lawfully perform its duties (e.g., AIA shall, prior to performing its duties in any jurisdiction, obtain any licenses or other qualifications required by such jurisdiction).

6. <u>AIA and Investment Manager Independent</u>. AIA and Investment Manager each shall be deemed to be an independent contractor with respect to the other and, unless otherwise expressly provided herein or with the prior written authorization of the other, neither party shall have authority to act for or represent the other, its affiliates, officers, directors or employees in any way and shall not otherwise be deemed to be an agent of the other. Nothing contained herein shall create or constitute AIA or the Investment Manager as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, nor shall be deemed to confer on either of them any express, implied, or apparent authority to incur any obligation or liability on behalf of any other.

7. <u>Term and Termination</u>.

(a) This Agreement shall continue in effect until terminated.

(b) Either party may terminate this Agreement by giving at least 90 days prior written notice to the other party of its intention to terminate this Agreement effective as of such date. No such termination shall relieve the Investment Manager from its obligations under Section 1.

(c) Either AIA or Investment Manager may terminate this Agreement by giving 30 days prior written notice if there has been a material breach of an agreement hereof by the other party, which breach is not cured within such 30-day period.

(d) No termination of this Agreement under subsection (b) or (c) of this Section 7 shall relieve the Investment Manager from its obligations under Section 1.

8. <u>Indemnification</u>.

(a) AIA shall indemnify, hold harmless, and defend the Investment Manager, the Fund and their respective principals and affiliates from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by AIA; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or

3

00046

on behalf of, AIA; provided, however that the duty to indemnify shall not apply to information regarding the Investment Manager, the Fund or their respective principals and affiliates that was approved in advance by Investment Manager or was based upon information provided in writing to AIA by the Investment Manager.

(b)     The Investment Manager and the Fund, jointly and severally, shall indemnify, hold harmless, and defend AIA, its principals and its affiliates, from and against any loss, liability, claim, demand, damage, cost or expense (including reasonable attorneys' and accountants' fees) arising out of: (i) a material breach of any term of this Agreement by Investment Manager; or (ii) a material misrepresentation, misstatement or omission contained in any marketing material prepared by, or on behalf of, Investment Manager; provided, however, that the duty to indemnify shall not apply to information regarding AIA or its principals and affiliates that was approved in advance by AIA or was based upon information provided in writing to the Investment Manager by AIA.

9.   Miscellaneous.

(a)     Confidential Matters.  AIA and Investment Manager each shall use its best effort to safeguard the secrecy and confidentiality of all confidential and proprietary information of the other party (including the names and other identifying information of persons solicited by AIA) and shall not disclose any of the foregoing to any third party except:

(i)     information which at the time of disclosure is part of the public knowledge or literature that is readily accessible to such third party; provided that any combination of features shall not be deemed within this exception merely because individual features are part of the public knowledge or literature that is readily accessible to such third party, but only if the combination itself and its principle of operations are part of the public knowledge or literature that is readily accessible to such third party;

(ii)    information required by law to be disclosed; or

(iii)   as otherwise may be consented to by such other party or permitted by the terms of this Agreement.

(b)     Assignment.  This Agreement shall not be assigned by either party without the prior express written consent of the other party.

(c)     Amendment; Waiver.  This Agreement shall not be amended except by a writing signed by the parties hereto.  No waiver of any provision of this Agreement shall be implied from any course of dealing between the parties hereto or from any failure by either party hereto to assert its rights hereunder on any occasion or series of occasions.

(d)     Severability.  If any provision of this Agreement, or the application of any provision to any person or circumstance, shall be held to be inconsistent with any present or future law, ruling, rule, or regulation of any court or governmental or regulatory authority having jurisdiction over the subject matter hereof, such provision shall be deemed to be rescinded or modified in accordance with such law, ruling, rule, or regulation, and the remainder of this

4

00047

Agreement, or the application of such provision to persons or circumstances other than those as to which it shall be held inconsistent, shall not be affected thereby.

(e)   <u>Notices</u>.  Any notice required or desired to be delivered under this Agreement shall be in writing and shall be delivered to each of the parties at its address set forth on the signature page hereof or at such other address as a party designates in writing.

(f)   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the law of the State of New York, U.S.A., excluding the choice of law and conflicts of law provisions thereof.

(g)   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(h)   <u>Headings</u>.  Headings to sections and subsections in this Agreement are for the convenience of the parties only and are not intended to be a part of or to affect the meaning or interpretation hereof.

(i)   <u>No Third Party Beneficiaries</u>.  This Agreement is not intended to and shall not convey any rights to persons who are not a party to this Agreement.

(j)   <u>Survival</u>.  Sections 1, 7(d), 8 and 9 shall survive the termination of this Agreement.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

5

00048

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS
LIMITED

By: _____
           John O'Donnell, Director

Address:
Suite 60, Grosvenor Close
Shirley Street
Nassau
P.O. Box N-75121

ARGENT MANAGEMENT CO. LLC

By: _____
           John R. Gordon, Vice President

Address:
500 West Putnam Avenue – Third Floor
Greenwich, Connecticut 06830

6

00049

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

ACCESS INTERNATIONAL ADVISORS                    ARGENT MANAGEMENT CO. LLC
LIMITED


By: _____              By: _____
         John O'Donnell, Director                        John R. Gordon, Vice President

Address:                                         Address:
Suite 60, Grosvenor Close                        500 West Putnam Avenue – Third Floor
Shirley Street                                   Greenwich, Connecticut 06830
Nassau
P.O. Box N-75121

00050

Ex 2

00051

*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Argent Management CO LLC · 13F-HR · For 3/31/08

**Filed On 7/14/08 5:58pm ET · SEC File 28-13141 · Accession Number 1085146-8-807**

Find [          ] in [ this entire Filing. ] Show [ Docs searched ] and [ every "hit". ]
Help... *Wildcards:* **?** (any letter), **\*** (many). *Logic:* for Docs: **&** (and), **|** (or); for Text: **|** (anywhere), **"(&)"** (near).

| As Of | Filer | Filing | As/For/On Docs:Pgs | Issue |
|---|---|---|---|---|
| 7/15/08 | Argent Management CO LLC | 13F-HR | 3/31/08  1:3 | |

### Quarterly Holdings or Combination Report by an Institutional Money Manager · Form 13F
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: 13F-HR | Argent Management Company Llc | 3 | 16K |

| 13F-HR | 1st Page of 3 | TOC | Top | Previous | Next | Bottom | Just 1st |
|---|---|---|---|---|---|---|---|

[ Sponsored Ads... ]

**Hedge Fund Directory**
Stay Ahead Of The Market With Barclay's Hedge Fund Database.
www.BarclayHedge.com

Ads by Google

```
                        UNITED STATES
                SECURITIES AND EXCHANGE COMMISSION
                     Washington, D.C.  20549

                         Form 13F

                    Form 13F COVER PAGE

    Report for the Calendar Year or Quarter Ended: March 31, 2008

    Check here if Amendment [  ]; Amendment Number:
    This Amendment (Check only one.): [  ] is a restatement.
                                      [  ] adds new holdings entries.

    Institutional Investment Manager Filing this Report:

    Name:    Argent Management Co. LLC
    Address: 500 West Putnam Avenue
             Greenwich, CT  06830-6086

    13F File Number: 028-13141

    The institutional investment manager filing this report and the person by whom
    it is signed hereby represent that the person signing the report is authorized
    to submit it, that all information contained herein is true, correct and
    complete, and that it is understood that all required items, statements,
    schedules, lists, and tables, are considered integral parts of this form.

    Person Signing this Report on Behalf of Reporting Manager:
```

00052

Name:    Timothy Bowman
Title:   Chief Accounting Officer
Phone:   203-618-3311

Signature, Place, and Date of Signing:

    /s/ **Timothy Bowman**     Greenwich, CT     July 14, 2008

Report Type (Check only one.):

[ X ]        13F HOLDINGS REPORT.

[  ]         13F NOTICE.

[  ]         13F COMBINATION REPORT.

| 13F-HR | 2nd Page of 3 | TOC | 1st | Previous | Next | Bottom | Just 2nd |
|---|---|---|---|---|---|---|---|

### FORM 13F SUMMARY PAGE

Report Summary:

Number of Other Included Managers:          0

Form13F Information Table Entry Total:      72

Form13F Information Table Value Total:      $279,865 (thousands)

List of Other Included Managers:

Provide a numbered list of the name(s) and Form 13F file number(s) of all
institutional managers with respect to which this report is filed, other
than the manager filing this report.

NONE

| 13F-HR | Last Page of 3 | TOC | 1st | Previous | Next | Bottom | Just 3rd |
|---|---|---|---|---|---|---|---|

[Enlarge/Download Table]

FORM 13F INFORMATION TABLE

| NAME OF ISSUER | TITLE OF CLASS | CUSIP | VALUE (x$1000) | SHARES/ PRN AMT | SH/ PRN | PUT/ CALL | INVSTMT DSCRETN | OTHER MANAGERS | SOLE | SHARED | NONE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AFFILIATED MANAGERS GROUP | COM | 008252108 | 1579 | 17402 | SH | | SOLE | | 17402 | 0 | 0 |
| ALBANY INTL CORP | NOTE 2.250% 3/1 | 012348AC2 | 2690 | 2670000 | PRN | | SOLE | | 2670000 | 0 | 0 |
| ALPHARMA INC | NOTE 2.125% 3/1 | 020813AM4 | 3879 | 3690000 | PRN | | SOLE | | 3690000 | 0 | 0 |
| AMERICAN FINL RLTY TR | NOTE 4.375% 7/1 | 02607PAB3 | 6240 | 6310000 | PRN | | SOLE | | 6310000 | 0 | 0 |
| AMERICREDIT CORP | NOTE 2.125% 9/1 | 03060RAR2 | 5468 | 10080000 | PRN | | SOLE | | 10080000 | 0 | 0 |
| AMERIGROUP CORP | NOTE 2.000% 5/1 | 03073TAA8 | 517 | 550000 | PRN | | SOLE | | 550000 | 0 | 0 |
| AMYLIN PHARMACEUTICALS INC | NOTE 3.000% 6/1 | 032346AF5 | 3874 | 4640000 | PRN | | SOLE | | 4640000 | 0 | 0 |
| BANKUNITED FINL CORP | NOTE 3.125% 3/0 | 06652BAE3 | 2317 | 4680000 | PRN | | SOLE | | 4680000 | 0 | 0 |
| BELL MICROPRODUCTS INC | NOTE 3.750% 3/0 | 078137AC0 | 2449 | 3420000 | PRN | | SOLE | | 3420000 | 0 | 0 |
| BOWNE & CO INC | SDCV 5.000%12/0 | 103043AB1 | 3793 | 3745000 | PRN | | SOLE | | 3745000 | 0 | 0 |
| CAL DIVE INTL INC | NOTE 3.250%12/1 | 127914AB5 | 1229 | 1005000 | PRN | | SOLE | | 1005000 | 0 | 0 |
| CAPITALSOURCE INC | NOTE 7.250% 7/1 | 14055XAG7 | 1267 | 1860000 | PRN | | SOLE | | 1860000 | 0 | 0 |
| CEPHALON INC | NOTE 2.000% 6/0 | 15670BAP4 | 4412 | 2930000 | PRN | | SOLE | | 2930000 | 0 | 0 |
| CHAMPION ENTERPRISES INC | NOTE 2.750%11/0 | 158496AC3 | 3381 | 3950000 | PRN | | SOLE | | 3950000 | 0 | 0 |
| CHARMING SHOPPES INC | NOTE 1.125% 5/0 | 161133AK3 | 4792 | 7220000 | PRN | | SOLE | | 7220000 | 0 | 0 |
| CITADEL BROADCASTING CORP | NOTE 1.875% 2/1 | 17285TAB2 | 5507 | 6820000 | PRN | | SOLE | | 6820000 | 0 | 0 |
| CONEXANT SYSTEMS INC | NOTE 4.000% 3/0 | 207142AH3 | 1973 | 2900000 | PRN | | SOLE | | 2900000 | 0 | 0 |
| COVAD COMMUNICATIONS GROUP I | DBCV 3.000% 3/1 | 222814AR6 | 446 | 465000 | PRN | | SOLE | | 465000 | 0 | 0 |
| CREDENCE SYS CORP | NOTE 1.500% 5/1 | 225302AF5 | 2252 | 2280000 | PRN | | SOLE | | 2280000 | 0 | 0 |
| CSG SYS INTL INC | NOTE 2.500% 6/1 | 126343AB5 | 290 | 360000 | PRN | | SOLE | | 360000 | 0 | 0 |
| CUBIST PHARMACEUTICALS INC | NOTE 2.250% 6/1 | 229678AC1 | 6458 | 7205000 | PRN | | SOLE | | 7205000 | 0 | 0 |
| CV THERAPEUTICS INC | NOTE 2.000% 5/1 | 126667AD6 | 10708 | 12470000 | PRN | | SOLE | | 12470000 | 0 | 0 |
| DECODE GENETICS INC | NOTE 3.500% 4/1 | 243586AB0 | 3550 | 8000000 | PRN | | SOLE | | 8000000 | 0 | 0 |
| DOLLAR FINL CORP | NOTE 2.875% 6/3 | 256664AB9 | 418 | 480000 | PRN | | SOLE | | 480000 | 0 | 0 |
| E M C CORP MASS | NOTN 1.750%12/0 | 268648AM4 | 16878 | 14380000 | PRN | | SOLE | | 14380000 | 0 | 0 |
| EDGE PETE CORP DEL | PFD CONV A | 279862205 | 536 | 20100 | SH | | SOLE | | 20100 | 0 | 0 |
| EMMIS COMMUNICATIONS CORP | PFD CV SER A | 291525202 | 152 | 40260 | SH | | SOLE | | 40260 | 0 | 0 |
| EPICOR SOFTWARE CORP | NOTE 2.375% 5/1 | 294261AA6 | 6275 | 7160000 | PRN | | SOLE | | 7160000 | 0 | 0 |
| FELCOR LODGING TR INC | PFD CV A $1.95 | 31430P200 | 384 | 53390 | SH | | SOLE | | 53390 | 0 | 0 |
| FLEETWOOD ENTERPRISES INC | SDCV 5.000%12/1 | 339099AD5 | 6507 | 4899000 | PRN | | SOLE | | 4899000 | 0 | 0 |
| FORD MTR CO DEL | NOTE 4.250%12/1 | 345370CF5 | 2856 | 3330000 | PRN | | SOLE | | 3330000 | 0 | 0 |

00053

| GILEAD SCIENCES INC | NOTE 0.625% 5/0 | 375558AH6 | 1044 | 710000 PRN | SOLE | 710000 | 0 | 0 |
|---|---|---|---|---|---|---|---|---|
| GLOBAL INDS LTD | DBCV 2.750% 8/0 | 379336A80 | 694 | 900000 PRN | SOLE | 900000 | 0 | 0 |
| GOLD RESV INC | NOTE 5.500% 6/1 | 38068NAB4 | 5002 | 5620000 PRN | SOLE | 5620000 | 0 | 0 |
| GREATBATCH INC | SDCV 2.250% 6/1 | 39153LAB2 | 42 | 50000 PRN | SOLE | 50000 | 0 | 0 |
| HANOVER COMPRESSOR CO | NOTE 4.750% 1/1 | 410768AE5 | 10801 | 6997000 PRN | SOLE | 6997000 | 0 | 0 |
| HEALTH MGMT ASSOC INC NEW | NOTE 4.375% 8/0 | 421933AF9 | 2096 | 2110000 PRN | SOLE | 2110000 | 0 | 0 |
| HOLOGIC INC | FRMT 2.000%12/1 | 436440AA9 | 3008 | 3130000 PRN | SOLE | 3130000 | 0 | 0 |
| INTERNATIONAL COAL GRP INC N | NOTE 9.000% 8/0 | 45928HN08 | 1768 | 1350000 PRN | SOLE | 1350000 | 0 | 0 |
| ITRON INC | NOTE 2.500% 8/0 | 465741AJ5 | 5608 | 3600000 PRN | SOLE | 3600000 | 0 | 0 |
| LAWSON SOFTWARE INC NEW | NOTE 2.500% 4/1 | 52078PAA0 | 2026 | 2200000 PRN | SOLE | 2200000 | 0 | 0 |
| LINEAR TECHNOLOGY CORP | NOTE 3.000% 5/0 | 535678AC0 | 4779 | 5097000 PRN | SOLE | 5097000 | 0 | 0 |
| MEDTRONIC INC | NOTE 1.500% 4/1 | 585055AL0 | 3288 | 3120000 PRN | SOLE | 3120000 | 0 | 0 |
| MERRILL LYNCH & CO INC | NOTE 3/1 | 590188N46 | 5762 | 5420000 PRN | SOLE | 5420000 | 0 | 0 |
| MESA AIR GROUP INC | NOTE 2.115% 2/1 | 590479AD3 | 333 | 890000 PRN | SOLE | 890000 | 0 | 0 |
| MESA AIR GROUP INC | NOTE 2.482% 6/1 | 590479AB7 | 3552 | 9470000 PRN | SOLE | 9470000 | 0 | 0 |
| MICRON TECHNOLOGY INC | NOTE 1.875% 6/0 | 595112AN6 | 814 | 1120000 PRN | SOLE | 1120000 | 0 | 0 |
| NABORS INDS INC | NOTE 0.940% 5/1 | 629556BA0 | 14959 | 14630000 PRN | SOLE | 14630000 | 0 | 0 |
| NEKTAR THERAPEUTICS | NOTE 3.250% 9/2 | 640268AH1 | 1344 | 1740000 PRN | SOLE | 1740000 | 0 | 0 |
| NOVAMED INC DEL | NOTE 1.000% 6/1 | 66986WAA6 | 3279 | 4150000 PRN | SOLE | 4150000 | 0 | 0 |
| OMNICARE INC | DBCV 3.250%12/1 | 68190GAL2 | 5552 | 8380000 PRN | SOLE | 8380000 | 0 | 0 |
| OSCIENT PHARMACEUTICALS CORP | NOTE 3.500% 4/1 | 68812RAC9 | 2059 | 6434000 PRN | SOLE | 6434000 | 0 | 0 |
| PALM HARBOR HOMES | NOTE 3.250% 5/1 | 696639AB9 | 473 | 910000 PRN | SOLE | 910000 | 0 | 0 |
| PANTRY INC | NOTE 3.000%11/1 | 698657AL7 | 2250 | 2800000 PRN | SOLE | 2800000 | 0 | 0 |
| PEABODY ENERGY CORP | SDCV 4.750%12/1 | 704549AG9 | 9148 | 8060000 PRN | SOLE | 8060000 | 0 | 0 |
| QLT INC | NOTE 3.000% 9/1 | 746927AB8 | 9637 | 10045000 PRN | SOLE | 10045000 | 0 | 0 |
| QUANTUM CORP | NOTE 4.375% 8/0 | 747906AE5 | 1536 | 1755000 PRN | SOLE | 1755000 | 0 | 0 |
| REINSURANCE GROUP AMER INC | PFD TR INC EQ | 759351307 | 6487 | 93010 SH | SOLE | 93010 | 0 | 0 |
| RF MICRODEVICES INC | NOTE 1.000% 4/1 | 749941AJ9 | 6225 | 9540000 PRN | SOLE | 9540000 | 0 | 0 |
| SCHOOL SPECIALTY INC | SDCV 3.750%11/3 | 807863AL9 | 875 | 960000 PRN | SOLE | 960000 | 0 | 0 |
| SIMON PPTY GROUP INC NEW | PFD CONV I 6% | 828806802 | 572 | 7580 SH | SOLE | 7580 | 0 | 0 |
| SIX FLAGS INC | PIERS | 83001P505 | 262 | 21947 SH | SOLE | 21947 | 0 | 0 |
| SPARTAN STORES INC | NOTE 3.375% 5/1 | 846822AE4 | 1846 | 2170000 PRN | SOLE | 2170000 | 0 | 0 |
| ST MARY LD & EXPL CO | NOTE 3.500% 4/0 | 792228AD0 | 1555 | 1540000 PRN | SOLE | 1540000 | 0 | 0 |
| STANDARD MTR PRODS INC | SDCV 6.750% 7/1 | 853666AB1 | 3342 | 3683000 PRN | SOLE | 3683000 | 0 | 0 |
| SYMANTEC CORP | NOTE 1.000% 6/1 | 871503AF5 | 2909 | 2710000 PRN | SOLE | 2710000 | 0 | 0 |
| TRANSOCEAN SEDCO FOREX INC | NOTE 1.500%12/1 | 893830AV1 | 3969 | 3620000 PRN | SOLE | 3620000 | 0 | 0 |
| TRICO MARINE SERVICES INC | NOTE 3.000% 1/1 | 896106AQ4 | 6388 | 7575000 PRN | SOLE | 7575000 | 0 | 0 |
| WCI CMNTYS INC | NOTE 4.000% 8/1 | 92923CAK0 | 3244 | 4771000 PRN | SOLE | 4771000 | 0 | 0 |
| WEST PHARMACEUTICAL SVSC INC | SDCV 4.000% 3/1 | 955306AA3 | 19997 | 20550000 PRN | SOLE | 20550000 | 0 | 0 |
| WIDEPOINT CORP | COM | 967590100 | 41 | 32455 SH | SOLE | 32455 | 0 | 0 |
| XILINX INC | DBCV 3.125% 3/1 | 983919AD3 | 8222 | 9110000 PRN | SOLE | 9110000 | 0 | 0 |

## Dates Referenced Herein

|  | | *Referenced-On Page* | | |
|---|---|---|---|---|
| *This 13F-HR Filing* | *Date* | *First* | *Last* | *Other Filings* |
| For The Period Ended | 3/31/08 | 1 | | |
| Filed On | 7/14/08 | 1 | | |
| Filed As Of / Effective As Of | 7/15/08 | | | |

Top                                                                    List All Filings

Filing Submission  –  Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

Sponsored Ads...

**Speak Up Entrepreneurs**
Join The Entrepreneurs' Movement
You Are Key to an Economic
Recovery
www.BuildAStrongerAmerica.com

**Form an LLC Online**
Free LLC Kit & Resident Agent.
100% Satisfaction Guarantee
www.CorpNet.com

**Argent Mortgage Company Llc**
1 Form, 25 Questions, 4 Free
Quotes No SSN Needed. Safe &
Easy!
TheEasyLoanSite.com/ArgentMortgage
Ads by Google

Copyright © 2009 *Fran Finnegan & Company*. All Rights Reserved.
*About* – *Privacy* – *Redactions* – *Help* — Tue, 13 Oct 17:37:02.3 GMT

00054



Ex 3

00055

-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 11 December 2008 00:19
To: 'Simon Bowen'
Cc: Leo Cheung
Subject: RE: Access Fees

Hi Simon,

I hope things are better across the pond! Please find attached the
calculations of what Argent owes Access for 2007.  Please review and let me
know if you are OK with amount and we will process payment.  Also, please
note that I used 15% payout for 2007 for Argent and 20% payout for Veritas.
I believe that the agreement was changed to 20% starting in January 2008 and
going forward.

Thanks,
Tim

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 9:15 AM
To: Timothy Bowman
Subject: RE: Access Fees

Thanks Tim

-----Original Message-----
From: Tim Bowman [mailto:tbowman@argentfundsgroup.com]
Sent: 10 December 2008 14:10
To: 'Simon Bowen'
Subject: RE: Access Fees

I am working on it now!

-----Original Message-----
From: Simon Bowen [mailto:sbowen@aiagroup.com]
Sent: Wednesday, December 10, 2008 8:54 AM
To: Timothy Bowman
Subject: Access Fees

Hi Tim

Really really need the fee schedule.

00056

Thanks & regards

Simon Bowen
AIA Europe Ltd
5/11 Lavington Street
London
SE1 0NZ

Tel : + 44 (0)20 7945 6156
Fax : + 44 (0)20 7945 6159

00057



$\varepsilon$x 4

00058

65000



00060



00061



00062

00063

| RETURN DATE:  NOVEMBER 10, 2009 | : | SUPERIOR COURT |
|---|---|---|
| ACCESS INTERNATIONAL ADVISORS LIMITED | : | JUDICIAL DISTRICT OF STAMFORD / NORWALK |
| v. | : | AT STAMFORD |
| ARGENT MANAGEMENT CO. LLC | : | |

STATE OF NEW YORK    )

                 :ss.

COUNTY OF NEW YORK )

**MYLES J. EDWARDS, ESQ.**, being duly sworn, deposes and says:

1.      I am the general counsel of plaintiff Access International Advisors Limited ("AIA").  I make this affidavit in support of AIA's application for a prejudgment remedy against defendant Argent Management Co. LLC ("Argent") in the amount of $1,190,678.00, plus interest at 9% since December 15, 2008, or $89,301.00, for a total of $1,279,979.00. Except where otherwise stated, I have personal knowledge of the facts set forth herein, and could testify to them at any prejudgment remedy hearing in this lawsuit.

2.      More specifically, I make this affidavit for the limited purpose of apprising the Court of certain admissions made by Argent's general counsel, Andrew Stone, Esq., which are relevant to the Court's determination of whether there is probable cause to grant a prejudgment remedy, and which would be admissible at a prejudgment remedy hearing as admissions by a party opponent.

3.      For a more complete recitation of the facts giving rise to this lawsuit and AIA's application for a prejudgment remedy, I respectfully refer the Court to the accompanying Affidavit of Guy de La Tour du Pin Verclause, sworn to on October 12, 2009.

00064

4.      As Mr. Verclause states in his affidavit, AIA made several requests to Argent for payment in early 2009.  After these entreaties proved fruitless, I initiated several discussions with Mr. Stone beginning in or about June 2009 in an effort to facilitate payment.

5.      During these discussions, Mr. Stone admitted to me several times that Argent does not dispute the fact that it owes AIA the 2007 AIA Fees pursuant to the parties' contract, and that it has no valid excuse for its failure to pay.

6.      In fact, in or about June 2009, Mr. Verclause and I traveled to Argent's offices in Greenwich and met with Mr. Stone and Ronald Fertig, Argent's Chief Operating Officer. During this meeting, Messrs. Stone and Fertig stated that although there had been some miscommunications concerning the wire instructions for the payment, they acknowledged that Argent owes the debt to AIA, and represented that Argent would make payment as soon as possible.

7.      Mr. Stone also admitted the debt in numerous telephone conversations.  In particular, on June 23, 2009, I had a telephone conversation with Mr. Stone in which Mr. Stone apologized to me for the delay in payment, told me that Argent is "not disputing the debt," and promised that the money would be wired to AIA "by the end of the week."  The money did not arrive "by the end of the week."

8.      Accordingly, I had AIA's outside counsel send a formal demand letter to Mr. Stone.  In an ensuing telephone conversation on July 13, 2009, Mr. Stone told me that "there was no contest on the fact that the fees are due and owing."  Mr. Stone further

2

00065

advised that me that Argent's Chief Executive Officer, David Bruce McMahan, purportedly did not want to pay the money owed to AIA because Mr. McMahan was concerned about exposing himself to the bankruptcy trustee for Bernard L. Madoff Securities. I informed Mr. Stone that this was preposterous because AIA had no connection whatsoever to Bernard Madoff. (For the sake of completeness, I also reminded Mr. Stone that even if AIA were involved in the Madoff situation, there is no plausible legal theory under which Argent could face exposure for remitting payment of the AIA Fees.)

9.      In response, Mr. Stone asked me to have AIA provide Argent with a letter stating that AIA was not subject to any pending or threatened claims; Stone promised that upon receipt of such a letter, the AIA Fees would be wired in "days or less."

10.     Although AIA sent the letter requested by Mr. Stone within 24 hours of his request, Argent still did not remit payment.

11.     I believe that Argent and Mr. McMahan know full well that there is no justification for Argent's failure to pay the AIA Fees, and that they know that the Madoff scandal has nothing to do with Argent's obligation to AIA. I respectfully urge the Court to ignore this "red herring" if Argent attempts to interject it into this proceeding.

Myles J. Edwards

Sworn to before me this
13th day of October, 2009

Notary Public

Christine Wawrynek
Notary Public, State of New York
No. 02WA6128208
Qualified in Kings County
Commission Expires June 6, 20 13

00060

3

RETURN DATE:  NOVEMBER 17, 2009      :   SUPERIOR COURT

    :

ACCESS INTERNATIONAL ADVISORS      :   JUDICIAL DISTRICT OF
LIMITED      :   STAMFORD / NORWALK

    :

        v.      :   AT STAMFORD

    :

ARGENT MANAGEMENT CO. LLC      :   OCTOBER 16, 2009

## MOTION FOR PREJUDGMENT DISCLOSURE
## OF PROPERTY AND ASSETS

Pursuant to Conn. Gen. Stat. §52-278n and Practice Book §13-13, plaintiff Access

International Advisors Limited hereby moves this Court for entry of an order for

prejudgment disclosure of property and assets.  In support of this motion, plaintiff states as

follows:

1.     Pursuant to the attached Application for Prejudgment Remedy, plaintiff will

demonstrate probable cause sufficient for the issuance of a prejudgment remedy in the

amount of One Million Two Hundred Seventy-Nine Thousand Nine Hundred Seventy-Nine

and 00/100 Dollars ($1,279,979.00).

2.     To protect its rights of recovery, plaintiff must determine the existence,

location, and extent of the defendant's interest in property or debts owing to it.

WHEREFORE, plaintiff respectfully requests that this Court enter an order requiring

defendant Argent Management Co. LLC, to disclose the existence, location, and extent of

any and all property, real and/or personal, in which he has an interest, and further to

disclose the nature and extent of any debts owing to it.

00067

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

PLAINTIFF
ACCESS INTERNATIONAL
ADVISORS LIMITED

By: _____
    Douglas J. Varga

    ZELDES, NEEDLE & COOPER, P.C.
    1000 Lafayette Boulevard
    P.O. Box 1747
    Bridgeport, CT  06601-1747
    Telephone:  (203) 333-9441
    Facsimile:   (203) 333-1489
    E-mail:  dvarga@znclaw.com
    Juris No. 69695

    Its Attorneys

Of Counsel:

Jack A. Gordon, Esq.
(pending pro hac vice admission)
Joshua B. Katz, Esq.
(pending pro hac vice admission)
KENT. BEATTY & GORDON, LLP
425 Park Avenue, The Penthouse
New York, NY 10022
Telephone:  (212) 421-4300
Facsimile:   (212) 421-4303
E-mail:  JAG@KBG-law.com

00068

RETURN DATE:  NOVEMBER 17, 2009      :   SUPERIOR COURT
                                     :
ACCESS INTERNATIONAL ADVISORS        :   JUDICIAL DISTRICT OF
LIMITED                              :   STAMFORD / NORWALK
                                     :
     v.                                 :   AT STAMFORD
                                     :
ARGENT MANAGEMENT CO. LLC            :

## <u>ORDER FOR PREJUDGMENT DISCLOSURE OF PROPERTY AND ASSETS</u>

The Court having found probable cause sufficient for the issuance of prejudgment remedies, and the Court having heard argument on plaintiff's Motion for Prejudgment Disclosure of Property and Assets pursuant to Conn. Gen. Stat. §52-278n and Practice Book § 13-13, it is hereby ORDERED:

That on or before _____, 2009, defendant Argent Management Co. LLC, shall submit to the Court and to plaintiff's counsel a sworn statement setting forth (a) the existence, location, and extent of any and all property, real and/or personal, in which he has an interest, and (b) the nature and extent of any debts owing to Argent Management Co. LLC.

Dated at Stamford, Connecticut this ___ day of _____, 2009.


                    THE COURT

                    By:_____
                      Judge of the Superior Court

00069

| RETURN DATE: NOVEMBER 17, 2009 | : | SUPERIOR COURT |
| --- | --- | --- |
| ACCESS INTERNATIONAL ADVISORS LIMITED | : : : | JUDICIAL DISTRICT OF STAMFORD / NORWALK |
| v. | : : | AT STAMFORD |
| ARGENT MANAGEMENT CO. LLC | : | OCTOBER 16, 2009 |

## NOTICE

YOU HAVE RIGHTS SPECIFIED IN THE CONNECTICUT GENERAL STATUTES,

INCLUDING CHAPTER 903a, THAT YOU MAY WISH TO EXERCISE CONCERNING

THIS APPLICATION FOR PREJUDGMENT REMEDY. THESE RIGHTS INCLUDE THE

RIGHT TO A HEARING: (1) TO OBJECT TO THE PROPOSED PREJUDGMENT

REMEDY BECAUSE YOU HAVE A DEFENSE TO OR SETOFF AGAINST THE ACTION

OR A COUNTERCLAIM AGAINST THE PLAINTIFF OR BECAUSE THE AMOUNT

SOUGHT IN THE APPLICATION FOR PREJUDGMENT REMEDY IS UNREASONABLY

HIGH OR BECAUSE PAYMENT OF ANY JUDGMENT THAT MAY BE RENDERED

AGAINST YOU IS COVERED BY ANY INSURANCE THAT MAY BE AVAILABLE TO YOU;

(2) TO REQUEST THAT THE PLAINTIFF POST A BOND IN ACCORDANCE WITH

SECTION 52-287d OF THE GENERAL STATUTES TO SECURE YOU AGAINST ANY

DAMAGES THAT MAY RESULT FROM THE PREJUDGMENT REMEDY; (3) TO

REQUEST THAT YOU BE ALLOWED TO SUBSTITUTE A BOND FOR THE

PREJUDGMENT REMEDY SOUGHT; AND (4) TO SHOW THAT THE PROPERTY

SOUGHT TO BE SUBJECTED TO THE PREJUDGMENT REMEDY IS EXEMPT FROM

SUCH A PREJUDGMENT REMEDY.

00070

The plaintiff is seeking in its Application for Prejudgment Remedy to attach certain real property in which Argent Management Co. LLC, has an interest and/or additional property and assets of Argent Management Co. LLC, which may be disclosed pursuant to the appended Motion for Prejudgment Disclosure of Property and Assets.  Plaintiff is also seeking to garnish monies due and owing Argent Management Co. LLC, and monies to be paid to Argent Management, Co., LLC, by third parties in satisfaction of debts owing to it.

A DEFENDANT MAY REQUEST A HEARING TO CONTEST THE APPLICATION FOR A PREJUDGMENT REMEDY, ASSERT ANY EXEMPTION OR MAKE A REQUEST CONCERNING THE POSTING OR SUBSTITUTION OF A BOND.  THE HEARING MAY BE REQUESTED BY ANY PROPER MOTION TO THE COURT OR BY RETURN TO THE COURT OF A SIGNED CLAIM FORM THAT INDICATES, BY CHECKING OF THE APPROPRIATE BOX ON THE CLAIM FORM, WHETHER THE CLAIM IS AN ASSERTION OF A DEFENSE, COUNTER CLAIM, SET-OFF, OR EXEMPTION, AN ASSERTION THAT ANY JUDGMENT MAY BE RENDERED IS ADEQUATELY SECURED BY INSURANCE, AN ASSERTION THAT THE AMOUNT SOUGHT IN THE APPLICATION FOR PREJUDGMENT REMEDY IS UNREASONABLY HIGH, A REQUEST THAT THE PLAINTIFF BE REQUIRED TO POST A BOND TO SECURE THE DEFENDANT AGAINST ANY DAMAGES THAT MAY RESULT FROM THE PREJUDGMENT REMEDY OR A REQUEST THAT THE DEFENDANT BE ALLOWED TO SUBSTITUTE A BOND FOR THE PREJUDGMENT REMEDY.

00071

2

PLAINTIFF
ACCESS INTERNATIONAL
ADVISORS LIMITED

By: _____
Douglas J. Varga

ZELDES, NEEDLE & COOPER, P.C.
1000 Lafayette Boulevard
P.O. Box 1747
Bridgeport, CT  06601-1747
Telephone:  (203) 333-9441
Facsimile:   (203) 333-1489
E-mail:  dvarga@zisclaw.com
Juris No. 69695

Its Attorneys

Of Counsel:

Jack A. Gordon, Esq.
(pending pro hac vice admission)
Joshua B. Katz, Esq.
(pending pro hac vice admission)
KENT. BEATTY & GORDON, LLP
425 Park Avenue, The Penthouse
New York, NY 10022
Telephone:  (212) 421-4300
Facsimile:   (212) 421-4303
E-mail:  JAG@KBG-law.com

00072